319 So.2d 367 (1975)
STATE of Louisiana, Appellee,
v.
Lawrence "Red" BABIN, Appellant.
No. 54608.
Supreme Court of Louisiana.
February 24, 1975.
On Rehearing July 25, 1975.
Rehearing Denied September 5, 1975.
Dissenting Opinion July 30, 1975.
Dissenting Opinion October 10, 1975.
*368 Bertrand DeBlanc, Lafayette, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan Stansbury, Dist. Atty., Ronald E. Dauterive, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant Babin was convicted of armed robbery, La.R.S. 14:64, and sentenced *369 to twenty-five years at hard labor. On his appeal, he relies upon three bills of exceptions.

I
By motion to quash, La.C.Cr.P. art. 532(1), the indictment is attacked as charging an offense made punishable by an unconstitutional statute. (Bill No. 1.)
The defendant contends that the armed robbery statute, La.R.S. 14:64, is unconstitutional. The enactment defines the offense and prescribes imprisonment at hard labor for not less than five years and for not more than ninety-nine years "without benefit of parole, probation or suspension of sentence".
The defendant contends that the italicized prohibition in the penalty clause is in direct conflict with Article V, Section 10, of the Louisiana Constitution of 1921 (in effect at the time of the offense). This latter provision confers upon the governor the power to grant reprieves and, upon recommendation of the pardon board, to grant pardons and to commute sentences.
The statute prohibits "parole", "probation", or "suspension of sentence", whereas the constitution empowers the governor to grant "reprieves", "pardons" or to "commute sentences". It is argued that, despite the shades of difference in meaning between these terms, they essentially mean the same thing.[1]
However, the respective terms nevertheless have distinct and separate meanings. When the legislature prohibited "parole", "probation" or "suspension of sentence", it did not intend, and it did not in fact seek, to infringe upon the Governor's power to grant "reprieves" and "pardons" or to "commute sentences".
Notwithstanding that the effect of these different actions is indeed closely related, there are significant differences which permit each to have effect independently of the other. Thus, the Governor may grant reprieves and pardons or he may commute sentences, without contravening the legislative prohibition against granting parole, probation, or suspension of sentence to persons convicted under the statute. The prohibition does not, therefore, infringe upon the Governor's constitutional pardon-reprieve-commutation powers and is not unconstitutional for such contended reason. Cf. State v. Ramsey, *370 292 So.2d 708 (La.1974) and State v. Varice, 292 So.2d 703 (La.1974).

II
Bill No. 2 concerns the alleged denial by the trial court of the defendant's cross-examination (impeachment) rights. A state witness, a police officer, admitted on the stand that his pre-trial written statement was contrary to his own earlier trial testimony. (The witness had previously testified that he was the only policeman who arrested the accused; whereas he now admitted that his own pre-trial written report had stated that another police officer had advised the defendant that he was under arrest.)
It is not denied that the trial testimony of the officer was contrary to his prior written report. By reason of this conflict in a statement material to the case, the defendant arguably was entitled to the use of the police report for cross-examination under the rule as judicially formulated prior to the present decision.
The lead case on the issue in modern times is State v. Weston, 232 La. 766, 95 So.2d 305 (1957). There, summarizing and reconciling our previous jurisprudence, the court held that the trial judge should order production of a prior statement of a prosecution witness for use in cross-examination upon proper foundation, such as that the witness's "written statement was contrary in any respect to her testimony given at the trial." 95 So.2d 310. See also Pugh, Louisiana Evidence Law 686-89 (1975). The subsequent jurisprudence has usually mentioned the inconsistency as the sole basis for a proper foundation for requiring production of the pre-trial statement for use in cross-examination. See, e. g., State v. Adams, 302 So.2d 599, 604 (La.1974) ("A showing . . . that one or more of the material statements therein are contrary to the sworn testimony"). See also State v. Whitfield, 253 La. 679, 219 So.2d 493, 496 (1969) (summarizing later cases.[2]
Nevertheless, although a literal application of the prior jurisprudential test might require an opposite conclusion, we do not find reversible error presented here by the admitted inconsistency between the pre-trial statement and the actual trial testimony, at least in the light of the abbreviated record before us. For one thing, the actual discrepancy between the trial testimony and the inconsistent pre-trial statement, while concerning a fact material to the decision of the case, does not really concern a critical point at issue or necessarily indicate difference of a substantively significant nature between the pre-trial statement and the trial testimony. Also, it seems anomalous to reverse for failure to produce a document for cross-examination purposes where the witness distinctly admits the conflict between it and his trial testimony, whereas (because of such admission) the statement itself could not be produced as evidence, see La.R.S. 15:493.[3] *371 III
The defendant pleaded "not guilty" and also "not guilty by reason of insanity". Before submission to the jury, the defendant requested the court to read to the jury Articles 652, 654, and 657 of the Code of Criminal Procedure. Bill No. 3 was taken to the denial of this request for a special written charge.
The effect of the requested special charge was to inform the jury that, if it found the accused not guilty by reason of insanity, he would not be released upon the streets but would instead be committed to an appropriate state institution, with his release conditioned only upon a subsequent judicial finding that he could be discharged or go on probation without danger to others and to himself.
The defendant contended that this charge was necessary to effectuate jury consideration of his defense of not guilty by reason of insanity. Since to the layman "not guilty" connotes release from confinement, the jury may have wished to avoid freeing the defendant in ignorance that a finding of "not guilty by reason of insanity" would continue the confinement of this mental defective.
The insanity defense was founded upon the accused's mental condition. He was a man of 23 with a mental age of five, an IQ of 50. He had been committed to mental institutions from 1961 to 1969 (until released because of lack of welfare funding).[4]
A majority of this court has determined that the trial court did not abuse his discretion by failing to give the requested special charge.[5]
In the majority's view: The procedure, treatment, commitment and discharge of a defendant found not guilty by reason of insanity, though not in the true sense a sentence, is nevertheless not pertinent to the jury's function to determine guilt or innocence of the accused. The various aspects of the post-verdict treatment of a defendant found not guilty by reason of insanity can only serve to complicate and confuse the jury function. The law has delegated the responsibility and authority for administering this post-conviction procedure to the judge, and the jury verdict should not be influenced by this aspect of the case.
The majority therefore does not find merit to this bill. Cf., e. g., State v. Blackwell, 298 So.2d 798 (La.1974).

Decree
The conviction and sentence are affirmed.
Affirmed.
SUMMERS, J., concurs in the result.
*372 TATE, J., specially concurs as to Bill No. 2 and assigns reasons in which BARHAM and CALOGERO, JJ., concur.
DIXON, J., dissents with written reasons.
BARHAM, J., dissents with written reasons.
TATE, Justice (concurring as to Bill No. 2).
Bill No. 2 was taken to the denial for use in cross-examination of a prior inconsistent statement of a police witness. A majority of this court agrees that, under the circumstances, this does not constitute reversible error. However, a majority was not able to agree fully on the rationale.
The writer and those judges who concur in this opinion believe that the present instance is an instance of the unworkability of the present jurisprudential rule. In the present case, the defense finally proved that the pre-trial statement of the state witness is inconsistent with the trial testimony (the test for production under the rule), yet on appeal such denial of production is found to be harmless (since the witness admitted the inconsistency).
The trial court's ruling and the argument of counsel in the present case illustrate the confusion as to the present jurisprudential rule and its confusing application to the precise question at issue, namely: the production for use in cross-examination of a prosecution witness's pre-trial statement, when the latter may be inconsistent with the witness's trial testimony. The judicially formulated rule has also been the subject of critical scholarly comment on the grounds of its impracticality and theoretic illogic. See Pugh, Louisiana Evidence Law 689-91 (1974); see also, 34 La.L.Rev. 458-59 (1974).
The present appeal should force us to re-examine the rational bases of our rule and to re-formulate it, not only because of such reasons, but also because doubt is cast upon its validity, as previously formulated, by the recent decision of Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) by the United States Supreme Court.
At the outset, however, we should note that some of the confusion has arisen (as, for instance, in the argument made by the state in the present case) by the failure to distinguish between pre-trial discovery (and its relatively new concepts) and the disclosure at trial of statements of a prosecution witness for traditional use in crossexamination (a confrontation right, subject to limitations). See Pugh, Louisiana Evidence Law 686-87 (1974). We are here concerned only with the latter, not with pre-trial discovery. Decisions which concern pretrial discovery, such as State v. Square, 257 La. 743, 244 So.2d 200, 219-21 (1971), are therefore not truly pertinent to the present issue.
Confrontation Rights of Impeachment
The importance of the distinction is emphasized by the recent decision of our nation's highest court in Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). There, a state statute, which forbade disclosure of juvenile proceedings, barred impeachment on the ground of bias of the credibility of a prosecution witness by cross-examination as to his probationary status because of a juvenile court adjudication. (As a result, he was allegedly more vulnerable to police pressure to testify in favor of the prosecution.)
The high court held that the statute could not constitutionally prevent impeachment of the state witness. It held that the statute, as applied, effectively impaired the accused's right under the Confrontation *373 Clause to cross-examine the witnesses against him.
Speaking for a near-unanimous court, Chief Justice Burger stated, 415 U.S. 315-316, 94 S.Ct. 1110:
"The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution `to be confronted with the witnesses against him.' This right is secured for defendants in state as well as federal criminal proceedings. . .. Confrontation means more than being allowed to confront the witness physically. `Our cases contruing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination."* * *
"Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i. e., discredit, the witness.* * *"
The confrontation right guaranteed by the federal constitutionthe right to cross-examine prosecution witnesses, including reasonable opportunity to impeach their credibilityis to be distinguished from a claim for pretrial discovery, if for no other reason than this specific and important constitutional guarantee. (However, although there may be more state discretion in affording discovery, due process does prevent the state from withholding from the defendant evidence favorable to him, at least if he requests access to it. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[1]
The Davis case concerned impeachment of a state witness by cross-examination for bias, a traditional method of impeachment (permitted in Louisiana by La.R.S. 15:492). An equally traditional method of impeachment is by proof of a prior statement inconsistent with the witness's trial testimony (permitted in Louisiana by La. R.S. 15:493). See McCormick on Evidence, Section 33 (2d. 1972) (summarizing five traditional main lines of attack upon credibility of witnesses). The holding in Davis as to impeachment for bias, is equally applicable, it seems to us, to unreasonable state restrictions upon impeaching a prosecution witness through cross-examination as to his prior inconsistent statements.
Under Davis, the government may not because of the denial of confrontation (cross-examination) rightsvouch for a witness by placing him on the stand, but at the same time prevent the accused from using traditional tools of cross-examination to show that this government witness is not testifying accurately. Davis thus would invalidate a governmental prohibition, whether state or federal, against any impeachment whatsoever of a prosecution witness because of his prior statement inconsistent with his trial testimony. Equally suspect, it seems to us, is a rule (such as our own judicial formulation) which prevents the accused from access to the prior inconsistent statement of a prosecution witness, unless he first shows that it was inconsistentusually an impossible hurdle.
Amplification of Weston Rule in the Light of Davis
For the reasons noted, including the confusion as to our present rule, we think it *374 would be appropriate to amplify and modify the jurisprudential rule summarized by State v. Weston, 232 La. 766, 95 So.2d 305 (1957) and its progeny.[2] The rule in issue is limited to the production of a witness's prior statement for use by an accused for cross-examination purposes.
At any time after a prosecution witness has completed his testimony on direct examination, it seems to us that the trial court should, upon request of the accused (if the state denies access), order production of the prior statement for use in cross-examination under the following circumstances:
Upon any showing that the witness has made a prior statement out of court in relation to the incidents forming the basis of the charge or its investigation, the defendant may be entitled to compel production of such specified prior statement, in order for the trial court to determine in camera whether the doctrine should be made available for use in cross-examination of the witness.
The trial court's determination of the availability should preferably be on the basis that it relates to the subject matter as to which the witness has testified, as in the federal practice (see 18 U.S.C. § 3500, the Jencks Act), a practice first jurisprudentially developed, see Pugh, Louisiana Evidence Law 681-89 (1974). (However, a more restricted test of availability might be based upon whether the former statements were inconsistent with the trial testimony of the witness, either by reason of contradiction or omission or for any other reason.[3]
If, upon its private examination, the trial court finds that the statement should be made available under the test adopted, the court should then afford the defendant's counsel access to the statement or to that portion of it which is relevant to the proceeding before the court. However, if the trial judge denies the defendant access to the document, or to any part of it, as irrelevant or privileged, he shall seal such statement for subsequent filing with the appellate record if, on an appeal, review is sought of the trial court's use of its discretion in the matter.[4]
To minimize the potential conflict with federal constitutional guarantees (and thus to minimize possibilities of re-trial or federal vacation), the trial court's discretion should be exercised in favor of disclosure. Cf., e. g., State v. Davis, 259 La. 35, 249 *375 So.2d 193 (1971), where this court unanimously held that the prosecution witness statements need not be produced, and Davis v. Heyd, 479 F.2d 446 (C.A.5, 1973), where on federal habeas proceedings the state conviction was set aside.
As thus formulated, the rule permits effective impeachment by inconsistent statement of a prosecution witness, as now constitutionally required by Davis. Further, it provides for efficient review by this court, on the direct appeal, of the trial court's exercise of its discretion in forbidding use of the prior statement (provided, of course, objection is made at the time and the alleged error is specified in accordance with procedural requirements).
We deem the latter provision for appellate review of the trial court's action as advisable, in order to avoid the otherwise necessary resort to collateral post-conviction proceedings by the defendant, if convicted, for him to obtain state review of a claim of denial of federal constitutional right on such basis. La.C.Cr.P. art. 362(9). By affording this method of direct review, in accordance with the workable practice in the many other jurisdictions which have jurisprudentially or by rule or statute provided similarly for immediate effective review, we thus enable our judicial system to decide the issue, if raised, efficiently in a single appellate proceeding.
Davis has recognized a federal constitutional right of the nature we now consider. Unless the state court affords an adequate remedy for its vindication, the federal courts will. See Flanagan v. Henderson, 496 F.2d 1274 (C.A.5, 1974). By recognizing a state remedy whereby the right may be asserted and reviewed on the direct appeal, we avoid the prolonged delay in final determination of a claim of federal constitutional right on that account, as contrasted with the claim being reviewable only by post-conviction proceedings because of the absence of the excluded or excised prior statement from the appellate record. We also avoid the wasteful duplication of proceedings and diversion of the time of the accused, court, and counsel, which result from the subsequent and independent collateral proceedings required, if the denial of the constitutional right may not be adequately reviewed on the direct appeal.
Claim of Privilege as to Police Officer's Report
The state claims that the present police officer's report is privileged from disclosure. In so arguing, the state relies upon La.R.S. 44:3 (as amended in 1972) and its exemption of police records from the public records law, La.R.S. 44:1 et seq.
The public records law itself provides for the public's right to immediate examination of all public records. La.R.S. 44:31-33. The section relied upon, 44:3, exempts police records from the application of the chapter. The actual provision of Subpart A of 44:3 is: "Nothing in this Chapter [`Public Records'] shall be construed to require disclosure of records * * * held by * * * police departments * * *."
The statute literally does not apply to production of such records for purposes other than public examination. Thus, it does not prohibit production of ordinary police records for court use. To be contrasted, is the specific provision in Subpart B that records identifying confidential informers "shall be privileged, and no court shall order the disclosure of same except on grounds of due process or constitutional law." The terms of the statute do not, however, create any privileged status as to police records other than as to these latter.[5]
*376 If, as contended by the state, the statute attempts to forbid the accused access to such a prior statement of a prosecution witness which is inconsistent with the witness's trial testimony, the federal constitutional confrontation rights would bar the statute's application for such purpose. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), discussed above at length. Cf. also, Flanagan v. Henderson, 496 F.2d 1274 (C.A.5, 1974), indicating that Brady due process rights (see Footnote 1 above) may also require production of the statement, despite a claim of such statutory privilege.
State v. Square, 257 La. 743, 244 So.2d 200, 220 (1971), held non-erroneous the failure to allow pre-trial discovery of police records, primarily on the ground that pre-trial discovery is normally not permitted. By way of dicta, the opinion additionally stated that police reports are privileged by reason of La.R.S. 44:3. However, in Louisiana, non-constitutional privilege may ordinarily be created only by statute. Moosa v. Abdalla, 248 La. 344, 178 So.2d 273 (1965). At any rate, the Square decision concerned pre-trial discovery, and its holding is thus not applicable to the present issue, which concerns trial confrontation right, if only because of the above-discussed recent decision of the United States Supreme Court in Davis v. Alaska.
Related Issues
Our present critique is restricted to requirements for production of prior statements of a state witness, when sought after the conclusion of his direct testimony by a defendant for purposes of use in crossexamination (but not necessarily for introduction in evidence). Since the jurisprudential rule on this issue is often confused with statutory and jurisprudential rules relating to somewhat similar questions, we deem it advisable to note that today's discussion is limited to the issue noted and should not be regarded as involving such somewhat related issues as the following:
(1) Pre-Trial Discovery: Our discussion today does not touch upon pre-trial discovery statements of the prosecution witnesses. See, e. g., State v. Rose, 271 So.2d 863 (La.1973); State v. Bailey, 261 La. 831, 261 So.2d 583 (1972); State v. Hunter, 250 La. 295, 195 So.2d 273 (1967). We note with approval, however, that many trial courts of our state are affording reasonable pre-trial discovery in criminal cases, in the effort to facilitate fair and expeditious processing of criminal charges and in accord with the recommendation of virtually all modern law-reform studies which have addressed the question. See, e. g., American Bar Association Standards for Criminal Justice Relating to Discovery and Procedure Before Trial (1970) and National Advisory Commission Criminal Justice Standards and Goals, Report on Courts, Standard 4.9 (1973).
(2) Proof of Prior Contradictory Statement: The showing made so as to require production of the witness's prior statement for use in cross-examination only (the subject of this concurring opinion) is to be distinguished from the strict and more formal foundation which must be laid before the contradictory statement as to material fact may be independently proved. La.R.S. 15:493. (Of course, if upon cross-examination the witness does not distinctly admit making the statement, then the statement itself may be offered in evidence. La.R.S. 15:493.) See: Pugh, Louisiana Evidence Law 688 (1974); McCormick on Evidence, Sections 34, 36, 37 (2d ed. 1972).
(3) Past Recollection Recorded: When the witness himself has no present memory of the contents of the statement, the statement itself is admissible as "past recollection recorded". The witness's testimony, in effect, swears that the writing is an accurate record of his past recollection. State v. Tharp, 284 So.2d 536 (La.1973); *377 State v. Grayson, 225 La. 142, 72 So.2d 457, 459 (1954); State v. Smith, 144 La. 801, 81 So. 320 (1919); Bullard v. Wilson, 5 Mart. (N.S.) 196 (La.1826). See also: Wigmore on Evidence, Section 734 (Chadbourn rev., 1970); McCormick, Sections 299, 301; Note, Past Recollection Recorded and Present Recollection Revived in Louisiana, 11 Tul.L.Rev. 622 (1937).
(4) Memorandum Refreshing Memory While Witness on Stand: If while on the stand a witness uses a memorandum to refresh his memory, opposing counsel is entitled to view this memorandum for use in cross-examination. State v. Adams, 302 So.2d 599 (La.1974); State v. Holloway, 274 So.2d 699, 705 (concurring opinion) (La.1973); Wigmore, Section 762; McCormick, Section 9. On the other hand, under present jurisprudence, the opposing party may not secure the use for cross-examination On this ground by requesting the witness under cross-examination to refer to the pretrial memorandum in answer to a question. State v. Graves, 301 So.2d 864 (La.1974); State v. Payton, 294 So.2d 211 (La.1974).
(5) Memorandum Used to Refresh Memory Before Witness Is on Stand: In State v. Tharp, 284 So.2d 536 (La.1973), our opinion indicated the preferable view to be that all writings used to refresh a witness's memory in preparation for his testifying should, upon request, be made available for cross-examination of the witness, citing Wigmore, McCormick, and the Federal Rules of Evidence, Rule 612. The opposing view is that, in the absence of some further foundation (such as that set forth by the majority opinion for possibly inconsistent statements), such statements should not be made available when the witness had refreshed his memory through it before taking the stand. State v. Lane, 302 So.2d 880 (La.1974); State v. Nails, 255 La. 1070, 234 So.2d 184 (1970). It is in this context that the present issue is most often raised; but Davis implies that impeachment rights suggest a constitutional dimension relating to prior inconsistent statements, irrespective of whether or not the government witness has used them to refresh his memory in preparation for testifying.
We have taken the pains to elaborate these views because of our concern that the present jurisprudential rule relating to compelled disclosure of pre-trial statements is unworkable and poses problems that may affect the validity of Louisiana convictions or, at least, may subject them to attack by protracted post-conviction proceedings. We firmly believe that jurisprudential or judicial rule, or legislation, embodying the principles of Federal Rule of Evidence 612 and of the Jencks Act (18 U.S.C. § 3500) must be seriously considered, not only to avoid these problems but also in the interests of fair trials.
DIXON, Justice (dissenting).
I respectfully dissent.
The jury, which must decide whether defendant is not guilty by reason of insanity, cannot make an intelligent disposition of the case without knowing the legal consequences of its decision. I will not believe that the jury could have sent this man with the mind of a five-year-old to the penitentiary if it had known of another appropriate alternative.
I also join in the reasons expressed in Justice BARHAM's dissent.
BARHAM, Justice (dissenting).
Bill of Exceptions No. 3 was reserved to the ruling of the trial judge denying defendant's written request that the jury be given the following special instructions: "[R]ead the following articles from the Code of Criminal Procedure, 652, 654, 655, 657." These articles deal with the plea of not guilty by reason of insanity and the legal effects of an acquittal on that plea. Article 652 states that the defendant has the burden of proving by a preponderance *378 of the evidence the defense of insanity at the time of the offense. Article 654 provides that the legal effect of acquittal on grounds of insanity in a non-capital felony case is a mandatory hearing to determine whether the defendant is to be discharged or released on probation or committed to a state mental institution for a fixed or indeterminate period in the interest of public safety. Articles 655 and 657 proscribe the procedure for discharge once a defendant has been committed.
Defendant argues that when a plea of not guilty and not guilty by reason of insanity is entered, the judge is required to charge the jury "as to the law applicable to the case," including the law applicable to insanity. La.C.Cr.P. arts. 552, 802, 803. He further argues that under La.C.Cr.P. art. 807 the accused has the right to request special charges which shall be given if they do not require "* * * qualification, limitation, or explanation and if [they are] wholly correct and pertinent." It is contended that the special charges sought here are pertinent because the great revulsion in the mind of the average juror against an armed robber may cause reluctance on a juror's part to find a defendant not guilty by reason of insanity for fear that the defendant would automatically be freed. Proper instruction, it is urged, would prevent such an occurrence.
This issue is res nova in this jurisdiction, but it has been resolved in other jurisdictions. The majority of other jurisdictions espouse the traditional view that an instruction as to the post-verdict status of an individual acquitted on grounds of insanity is not allowable. See, e. g. State v. Park, 159 Me. 328, 193 A.2d 1 (1963); Gambrell v. State, 238 Miss. 892, 120 So.2d 758 (1960); State v. Garrett, 391 S.W.2d 235 (Mo.1965); State v. Hood, 123 Vt. 273, 187 A.2d 499, 11 A.L.R.3d 732 (1963). Courts in other jurisdictions have held that the decision of whether or not to give such an instruction lies within the discretion of the trial judge, even when it has been requested by the defendant or by the jurors. See, e. g., State v. Pastet, 152 Conn. 81, 203 A.2d 287 (1964); McClure v. State, 104 So.2d 601 (Fla.App.1958); Nelson v. State, 35 Wis.2d 797, 151 N.W.2d 694 (1967). See Annotation, 11 A.L.R.3d 737 (1963 and Supp.1973). The Supreme Court of Wisconsin has held that such instructions are preferred, because of the possibility that jurors who are ignorant of required hospitalization and believe they will free a defendant may be biased against a verdict of not guilty by reason of insanity; however, the decision does not mandate the instructions. State v. Shoffner, 31 Wis.2d 412, 143 N.W.2d 458 (1966). In two jurisdictions, Alaska and Michigan, the instructions must be given if they are requested by the defendant or the jurors. Schade v. State, 512 P.2d 907, 918 (Alaska 1973); People v. Cole, 382 Mich. 695, 172 N.W.2d 354 (1969). In one jurisdiction, the District of Columbia, instructions as to post-verdict results of an acquittal by reason of insanity are Required unless the defendant expressly objects to them. Lyles v. United States, 103 U.S. App.D.C. 22, 254 F.2d 725 (1957) (opinion by Judges Prettyman and Burger, now Chief Justice of the United States Supreme Court), cert, denied, 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067, cert, denied, 362 U.S. 943, 80 S.Ct. 809, 4 L.Ed.2d 771, cert, denied, 368 U.S. 992, 82 S.Ct. 610, 7 L.Ed.2d 529 (1962). I would adopt the position of the Supreme Courts of Alaska and Michigan, i. e., that the instructions must be given if they have been specially requested by a defendant or by the jurors.
Although instructions on the post-verdict status of a not guilty by reason of insanity acquittal have been analogized to instructions on post-conviction sentencing, it is my opinion that such an analogy is false; our prior holdings that such instructions are not allowable can be distinguished easily. See, e. g., State v. Blackwell, 298 So. 2d 798 (La.1974). Instructions as to a sentence following a guilty verdict concern *379 only the length of a defendant's incarceration whereas possible confusion in a juror's mind as to the ramifications of a verdict of not guilty by reason of insanity pertains to the very nature of the defendant's dispositionwhether or not he will be detained and the circumstances of the detention.
Although the average juror probably understands the results of a guilty or not guilty verdict, it is doubtful that he fully understands the ramifications of a not guilty by reason of insanity verdict; as a result he may reach his conclusions on that verdict by relying on pure speculation. Instructions as to the consequences of a not guilty by reason of insanity verdict may be necessary simply to equalize the effect of the juror's probable knowledge of the consequences of a guilty or not guilty verdict. Moreover, and more importantly, the possible injustice that would be done by imprisoning a defendant who should be hospitalized instead outweighs any possible "invitation to the jury" to forget their oaths and render an untrue verdict. People v. Cole, supra, 382 Mich. at 720, 172 N.W.2d at 366. Allowing instructions, such as those requested here, insures that a defendant will not be found guilty merely because the jury fears that a verdict of not guilty by reason of insanity would be tantamount to letting an accused who is possibly dangerous go free. Louisiana should be aligned with the growing minority of jurisdictions permitting jury instructions as to post-verdict consequences of a verdict of not guilty by reason of insanity.
I respectfully dissent.

ON REHEARING
CALOGERO, Justice.
We granted a rehearing in this case to reconsider the merit of Bill of Exceptions No. 3. This bill was taken to the denial of a defense request that the Court read to the jury Articles 652, 654, 655 and 657 of the C.Cr.P. which relate to the defense of insanity and the consequence of a finding of not guilty by reason of insanity.[1]
We held in the original opinion that the procedure, treatment, commitment and discharge of a defendant found not guilty by reason of insanity, though not in the true sense a sentence is nevertheless not pertinent to the jury's function to determine guilt or innocence of the accused. We concluded that the various aspects of the postverdict treatment of a defendant found not guilty by reason of insanity would only serve to complicate and confuse the jury function. Accordingly, we found no error in the trial court's refusal to give the requested charge.
Defendant's position is that under Article 807 the accused has the right to request special charges and same shall be given by the Court if they do "not require qualification, limitation, or explanation, and if [they are] wholly correct and pertinent." He argues that besides being wholly correct and pertinent, they are necessary because absent explanation the jury would not normally know the consequence of a finding of not guilty by reason of insanity and might well conclude that such a finding would automatically cause the defendant *380 to be freed. His most plausible argument, strongly urged in his application for rehearing, is that Art. 803 of the C.Cr. P. requires that the charge be given.
Upon reconsideration we reverse our original holding and find merit in Bill of Exception No. 3.
As was indicated in the dissenting opinion on original hearing this issue is res nova in this jurisdiction, and resolution of the problem in other jursdictions around the country is divided.
Basically the problem is viewed as a juridical choice between a possible miscarriage of justice flowing from the imprisonment of one who should be hospitalized, because the jury does not understand the effects of its insanity verdict, and a possible invitation to the jury to consider matters extraneous to the merits in rendering a verdict. See People v. Cole, 382 Mich. 695, 172 N.W.2d 354, 356 (1969).
The difficult choice which we must here make is made easier by the fairly explicit dictate of Art. 803 of the Code of Criminal Procedure which provides that "When a defendant has specially pleaded insanity in accordance with Article 552, the court shall charge the jury with respect to the law applicable thereto."
While the State would have us interpret the foregoing article to mean that when a defendant has pleaded insanity the court shall charge the jury with respect to the law applicable to the legal test for insanity and related matters bearing upon the determination of guilt or innocence, we believe the more sensible interpretation to be that the court shall charge the jury with respect to the law relating to insanity, including the explicit provisions of Arts. 654, 655 and 657 which have to do with the consequence of a finding of not guilty by reason of insanitythe procedural aftermath of such finding.
While Art. 802's general dictate that the court shall charge the jury "as to the law applicable to the case" might properly not refer to the law as it relates to penalty, we believe that Art. 803's direction to charge the jury "with respect to the law applicable there to," concerning insanity, does refer to the specific legal provisions of Arts. 654, 655 and 657.
The issue before us, in addition to being res nova, is distinguishable from State v. Blackwell, 298 So.2d 798 (La.1974). Instructions on the post-verdict status of a not guilty by reason of insanity acquittal are not properly analogous to instructions on post-conviction sentencing, because as was stated in the dissent in this case on original hearing, instructions as to a sentence following a guilty verdict concern only the length of the defendant's incarceration, whereas possible confusion in a juror's mind as to the ramifications of a verdict of not guilty by reason of insanity pertains to the very nature of the defendant's disposition, i. e., whether or not he will be detained and the circumstances of his detention.
The general question with which we are here confronted was particularly well discussed in the case of Lyles v. United States, 103 U.S.App.D.C. 22, 254 F.2d 725 (1957) cert denied, 356 U.S. 961, 78 S.Ct. 997, 2 L. Ed.2d 1967. There the court in an opinion jointly authored by Judges Prettyman and Burger (presently Chief Justice of the United States Supreme Court) said:
In cases where the defense of insanity is asserted what, if anything, should the court instruct the jury about the consequences of a verdict of not guilty by reason of insanity, . . .?
* * * * * *
"This point arises under the doctrine, well established and sound, that the jury has no concern with the consequences of a verdict, either in the sentence, if any, or the nature or extent of it, or in probation. *381 But we think that doctrine does not apply in the problem before us. The issue of insanity having been fairly raised, the jury may return one of three verdicts, guilty, not guilty, or not guilty by reason of insanity. Jurors, in common with people in general, are aware of the meanings of verdicts of guilty and not guilty. It is common knowledge that a verdict of not guilty means that the prisoner goes free and that a verdict of guilty means that he is subject to such punishment as the court may impose. But a verdict of not guilty by reason of insanity has no such commonly understood meaning. As a matter of fact its meaning was not made clear in this jurisdiction until Congress enacted the statute of August 9, 1955. It means neither freedom nor punishment. It means the accused will be confined in a hospital for the mentally ill until the superintendent of such hospital certifies, and the court is satisfied, that such person has recovered his sanity and will not in the reasonable future be dangerous to himself or others. We think the jury has a right to know the meaning of this possible verdict as accurately as it knows by common knowledge the meaning of the other two possible verdicts.
* * * * * *
"Sometimes a defendant may not want such an instruction given. If that appears affirmatively on the record we would not regard failure to give it as grounds for reversal. Otherwise, whenever hereafter the defense of insanity is fairly raised, the trial judge shall instruct the jury as to the legal meaning of a verdict of not guilty by reason of insanity in accordance with the view expressed in this opinion."
In view of our interpretation of Art. 803 of the C.Cr.P., and in order to prevent a possible miscarriage of justice, flowing from the imprisonment of one who should be hospitalized because a jury does not understand the effects of an insanity verdict, we hold that the instructions here at issue must be given if they have been specially requested by defendant or by the jurors.
We prefer not to prescribe any particular form that such instructions must take. However, when the trial judge has not included in the general charge an instruction explaining or quoting the law applicable to a verdict of not guilty by reason of insanity, then upon defendant's request he must read defendant's wholly applicable, wholly correct suggested charge to the jury. Art. 807 C.Cr.P.
Accordingly, defendant's conviction and sentence are reversed and the case is remanded to the trial court for further proceedings consistent with this holding.
DIXON, J., concurs and assigns written reasons.
SANDERS, C.J., dissents and assigns written reasons.
SUMMERS and MARCUS, JJ., dissent.
DIXON, Justice (concurring).
I concur in the disposition of this case, but disagree with a portion of the opinion.
I cannot agree that the reasons supporting this opinion differ in any respect from those which would require a different conclusion from that reached in State v. Blackwell, 298 So.2d 798 (1974). The Blackwell case, in my opinion, is wrong, and should be overruled.
SANDERS, Chief Justice (dissenting).
In a series of decisions beginning in 1952, this Court has held that it is not error for *382 the trial judge to refuse to instruct the jury as to the sentence regulations, such as minimum terms and availability of probation and parole. State v. Blackwell, La., 298 So.2d 798 (1973); State v. Andrus, 250 La. 765, 199 So.2d 867 (1967); State v. Green, 244 La. 80, 150 So.2d 571 (1963); State v. Morris, 222 La. 480, 62 So.2d 649 (1952).
We have likewise held that sentence regulations form no part of the applicable law to be argued by counsel to the jury. State v. Lewis, La., 296 So.2d 824 (1974); State v. Harris, 258 La. 720, 247 So.2d 847 (1971).
Only recently, we held that it was not reversible error for the court to disallow questions addressed to prospective jurors concerning the maximum sentence and disposition of the defendant upon conviction. State v. George, La., 312 So.2d 860 (1975).
Today, in an abrupt departure from the established policy that the jury is concerned only with the determination of guilt or innocence, the majority reverses the conviction on the ground that the trial judge refused to instruct the jury as to what disposition would be made of the defendant if he was found not guilty by reason of insanity.
In my opinion, the holding is in error for several reasons. The special charge was not submitted in writing to the trial judge but was requested orally. Article 807 of the Louisiana Code clearly provides that requested special charges shall be in writing and that a copy shall be furnished to opposing counsel. See State v. Orsby, 261 La. 605, 260 So.2d 639 (1972); State v. Shirley, 256 La. 665, 237 So.2d 676 (1970). It is true that defense counsel in his oral request referred to the numbers of the codal articles from which the special charge was to be taken, but such a reference does not comply with the requirement that the special charge be in writing and that a copy be furnished to opposing counsel.
The request rejected by the trial judge was that he read to the jury Articles 652, 654, 655, and 657 of the Louisiana Code of Criminal Procedure. The substance of Article 652, relating to the burden of proof as to the defense of insanity, was included in the general charge.
An examination of Articles 654, 655, and 657 discloses that the content of these articles is foreign to the jury's function. The articles consist of seven lengthy paragraphs. The first paragraph of Article 654 deals with the commitment of a defendant found insane in a capital case. This material, of course, would not be pertinent to the present case and would alone justify a rejection of the special charge. LSA-C.Cr.P. Art. 807; State v. Fox, 251 La. 464, 205 So.2d 42 (1967); State v. Latigue, 251 La. 193, 203 So.2d 546 (1967).
The second paragraph of Article 651 covers in detail the procedures for the commitment to a mental institution, probation, or discharge of a defendant found not guilty by reason of insanity in other felony cases.
Article 655 contains a detailed statement of the procedures for release of a defendant previously committed to a mental hospital by discharge or release on probation. It fixes the time for making the application, provides for a recommendation of the Superintendent, and provides for the distribution of the report.
Article 657 provides for a hearing followed by court action releasing or re-commiting the defendant.
It is apparent that the content of these articles is both prolix and foreign to the jury's function. As prolix as the articles are, however, the procedures are incomplete without the inclusion of Article 656, which describes the intermediate step of medical examination by physicians, before the final hearing.
*383 I conclude, therefore, that the instructions are not wholly correct and pertinent.
On the basic issue as to whether or not the jury should be charged as to the multiple procedures confronting the defendant found not guilty by reason of insanity, I am of the opinion that such an instruction is unnecessary and will burden the jury with procedural details foreign to its work. The weight of authority in the United States is that such an instruction need not be given. See, e. g., State v. Hood, 123 Vt. 273, 187 A.2d 499, 11 A.L.R.3rd 732 (1963); Gambrell v. State, 238 Miss. 892, 120 So.2d 758 (1960); State v. Garrett, Mo., 391 S.W.2d 235 (1965); Anno. 11 A.L.R.3rd 737.
In State v. Hood, supra, the Vermont Supreme Court in rejecting the instruction stated:
"`The issue of insanity, fairly raised, does no more than present another factual question to the jury: whether the defendant was mentally responsible when the criminal act was done. That issue should be determined on the basis of the evidence only and, in deciding it, the jury should not be influenced by a consideration of the result of an acquittal by reason of insanity; that is an extraneous consideration wholly unconnected with the evidence from which the jury must reach a determination of the factual issue raised concerning defendant's mental condition.'"
If any instruction must be given, however, I am of the opinion that the trial judge should confine himself to informing the jury that following a verdict of not guilty by reason of insanity, the hospitalization of the defendant is a matter for decision by the court.
For the reasons assigned, I respectfully dissent.
SUMMERS, Justice (dissenting).
I dissent for the reasons assigned by the Chief Justice.
NOTES
[1] Black's Law Dictionary (4th ed., 1951), defines these terms as follows:

Parole: ". . . A conditional release; condition being that, if prisoner makes good, he will receive an absolute discharge from balance of sentence, but, if he does not, he will be returned to serve unexpired time.. . ." (p. 1273);
Probation: ". . . In modern criminal administration, allowing a person convicted of some minor offense particularly juvenile offenders) to go at large, under a suspension of sentence, during good behavior, and generally under the supervision or guardianship of a probation officer . . . An act of grace and clemency which may be granted by the trial court to a seemingly deserving defendant whereby such defendant may escape the extreme rigors of the penalty imposed by law for the offense of which he stands convicted. . . ." (p. 1367);
Suspension of sentence: "This term may mean either a withholding or postponing the sentencing of a prisoner after the conviction, or a postponing of the execution of the sentence after it has been pronounced. In the latter case, it may, for reasons addressing themselves to the discretion of the court, be indefinite as to time, or during the good behavior of the prisoner. . . ." (p. 1529);
Reprieve: ". . . The withdrawing of a sentence of death for an interval of time, whereby the execution is suspended. . . . Also, the withdrawing of any sentence for a period of time. . . . It does no more than stay the execution of a sentence for a time. . . ." (p. 1466);
Pardon: "An act of grace, proceeding from the power intrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed. . . ." (p. 1268); and
Commutation: ". . . The change of a punishment from a greater to a less; as from hanging to imprisonment. . . ." (p. 351).
[2] The Whitfield decision, as did the Weston opinion (95 So.2d 310), recognized that a proper foundation might be shown also by other circumstances, whereby production of the prior statement became essential to a fair trial of the accused. For instance, in State v. Sbisa, 232 La. 961, 95 So.2d 619 (1957), a conviction was reversed for failure to order production of such a statement. The principal prosecution witness admitted under cross-examination that he had made a written statement to the police, but he did not recall whether he had or had not at the time informed the police of incriminating evidence to which he now testified. We held that the trial court had improperly denied production of the statement to refresh the witness's memory under such circumstances. Under such circumstances, opposing counsel is entitled to access to the statement for purposes of cross-examination. See Whitfield at 219 So.2d 496.
[3] The cited statute permits impeachment by independent proof of the prior inconsistent statement only "if the witness does not distinctly admit making such statement."
[4] At the age of 12, in 1960 the defendant had been committed to a mental institution upon the following findings: "The major outstanding finding was that this child is severely mentally retarded to the degree that he cannot distinguish right from wrong. Due to his low intelligence, he does not have the mental ability to have developed any moral judgment. He is not responsible for his behavior and he should be in custodial care. . . . Until he can be accepted by that institution, he should receive close supervision from his parent, as he will continue to get into difficulty since he does not have the intelligence to keep him out of trouble."

At the time the child's parent, who had requested help, had been informed that "spanking probably would do on good because Lawrence does not have enough understanding to be able to remember from one time to the next what is right or wrong." Tr. 26. The medical reports indicate that the condition was either congenital or the result of early brain injury.
[5] Mr. Justices Barham, Dixon, and the writer are not in accord with the majority in this holding.
[1] Brady holds to be a denial of due process a prosecution failure to disclose evidence, in the face of a defense request, where the evidence is favorable to the accused and is material either to guilt or punishment. The high court has thus far not held that federal due process requires disclosure further than this. See Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).
[2] These decisions include: State v. Gladden, 260 La. 735, 257 So.2d 388 (1972) (syllabus 9); State v. Mitchell, 258 La. 427, 246 So. 2d 814 (1971) (syllabi 2, 4); State v. Whitfield, 253 La. 679, 219 So.2d 493 (1969) (syllabus 1); State v. Bonner, 252 La. 200, 210 So.2d 319 (1968) (syllabus 6); State v. Martin, 250 La. 705, 198 So.2d 897 (1967) (syllabus 3); State v. Young, 249 La. 1053, 193 So.2d 243 (1966) (syllabus 1); State v. Cooper, 249 La. 654, 190 So.2d 86 (1966) (syllabus 9).
[3] Such latter test is structured upon the minimum requirements of federal constitutional law as enunciated by Davis and Bradythat the accused be denied no statement favorable to his defense, nor to his impeachment of the government witness because of a prior inconsistency. This more restricted rule might be more difficult to administer, as depending upon subjective judgments as to inconsistency and thus productive of more reversals, than the broader federal test that the prior statement should be produced if it relates to the subject matter of the witness's testimony.
[4] This is the procedure utilized by the new Federal Rules of Evidence, Rule 612. (See also Advisory Committee's Note, 51 F.R.D. 398-99.) Cf. also, 18 U.S.C. Section 3500 (1957; also, as amended in 1970). The procedure was first jurisprudentially established prior to its subsequent adoption by court rule or legislative enactment. See Pugh, Louisiana Evidence Law 683-85 (1974). See also Flanagan v. Henderson, 496 F.2d 1274 (C.A.5, 1974) and Williams v. Dutton, 400 F.2d 797 (C.A.5, 1968), providing for in camera examination by the state trial judge of pre-trial statements of prosecution witnesses which the defendant contended had been unconstitutionally withheld from his use at the trial.
[5] In permitting access to prior statements for purposes of cross-examination, the trial court may excise from revelation to the defendant portions so privileged, providing (in the terms of the statute) that due process rights of fair trial, confrontation rights, or other constitutional rights are not impaired by such excision.
[1] Art. 652 provides that the defendant has the burden of establishing the defense of insanity at the time of the offense. (The trial court while refusing to read Art. 652 did incorporate the substance of the Article in the general charge.) Art. 654 provides for the commitment of the defendant for care and treatment in the event of a verdict of not guilty by reason of insanity in a capital case. It also provides that in other felony cases a hearing is required to determine whether the defendant is to be discharged or released on probation; and if he is not discharged or released, he must be committed to a State mental institution for custody, care and treatment for a fixed or indeterminate period if the public safety requires this action. Arts. 655 and 657 prescribe the procedure for discharge once the defendant has been committed. (Articles 654, 655 and 657 were neither read to the jury, as requested, nor their substance given.)