DENNIS, Justice.
The defendant James Beckert was charged by bill of information under La. R.S. 14:64 with the crime of armed robbery. He entered pleas of not guilty and not guilty by reason of insanity. After a trial by jury he was found guilty and sentenced to serve twenty-five years at hard labor.
Defendant relies upon twelve assignments of error for reversal of his conviction and sentence. Because of our disposition of one of the assignments of error, we do nót reach the others. We find merit in deféndant’s assignment concerning the trial *495 court’s denial of a defense request that the court read to the jury a charge explaining the consequence of a verdict of not guilty by reason of insanity:
“A finding of not guilty by reason of insanity gives the Court the power to com-mitt [sic] the defendant to the Louisiana Hospital for the criminally insane. The defendant shall not be discharged until the Court decides that the defendant is not a danger to society or himself.”
This Court recently held that when the trial judge has not included in the general charge an instruction explaining or quoting the law applicable to a verdict of not guilty by reason of insanity, then upon defendant’s request he must, in accordance with Art. 807 C.Cr.P., read defendant’s wholly applicable, wholly correct suggested charge to the jury. State v. Babin, 319 So.2d 367 (La.Sup.Ct.1975). Since the charge requested met these requirements, the trial judge’s denial constituted reversible error, unless State v. Babin, supra, is inapplicable to this case.
The Babin decision was filed on July 25, 1975 and the trial of the instant case was completed on May 14, 1975. Because the instant case was not final but on appeal pending a direct review at the time of the Babin decision, we are arguably not presented with an issue of true retroactivity. See Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). However, the argument is of no concern here, because the factors to be considered in determining retroactive application of a court ruling weigh heavily in favor of such an application in this case.
Previously we adopted in State v. Beer, 252 La. 756, 214 So.2d 133 (1968), the criteria set forth in Stovall v. Denno, 388 U. S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199, 1203 (1967) for resolving the question of retroactivity:
“ * * * (a) the purpose to be served by the new standards, (b) the extent of the reliance by law inforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.”
The purpose to be served by requiring the trial court to instruct the jury, upon defendant’s request, as to the meaning of the possible verdict of not guilty by reason of insanity was particularly well expressed in the case of Lyles v. United States, 103 U.S.App.D.C. 22, 254 F.2d 725 (1957) cert. denied, 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067, and quoted with approval in State v. Babin, supra at p. 381. There the Court said:
“The issue of insanity having been fairly raised, the jury may return one of three verdicts, guilty, not guilty, or not guilty by reason of insanity. Jurors, in common with people in general, are aware of the meanings of verdicts of guilty and not guilty. It is common knowledge that a verdict of not guilty means that the prisoner goes free and that a verdict of guilty means that he is subject to such punishment as the court may impose. But a verdict of not guilty by reason of insanity has no such commonly understood meaning. As a matter of fact its meaning was not made clear in this jurisdiction until Congress enacted the statute of August 9, 1955. It means neither freedom nor punishment. It means the accused will be confined in a hospital,for the mentally ill until the superintendent of such hospital certifies, and the court is satisfied, that such person has recovered his sanity and will not in the reasonable future be dangerous to himself or others. We think the jury has a right to know the meaning of this possible verdict as accurately as it knows by common knowledge the meaning of the other two possible verdicts.”
The ruling in Babin was designed to prevent a possible miscarriage of justice, flowing from the imprisonment of one who *496 should be hospitalized because a jury does not understand the effects of an insanity verdict. Such rules, which have for their purpose the enhancement of the reliability of determinations of guilt or innocence, are usually applied retroactively. Williams v. Estelle, 500 F.2d 206, 208-209 (5th Cir. 1974) (citing authorities).'
Law enforcement authorities do not rely for guidance in their work upon instructions to the jury pertaining to insanity verdicts or the absence thereof. Little effect on the administration of justice will result from an application of the Babin rule to cases which were not final at the time of the ruling, since there are probably not a great number of cases in this category preserving the same issue for review. Therefore, the number of new trials made necessary by thus applying the Babin rule should be small.
 All of the pertinent factors point toward applying Babin here. Additionally, it would be patently unjust to affirm the conviction of the defendant, whose trial was held after Babin’s and involved the same issue, following the reversal of Ba-bin’s conviction. Accordingly, defendant’s conviction and sentence are reversed and the case is remanded to the trial court for further proceedings consistent with this holding.
SANDERS, C. J., dissents. See my dissent in State v. Babin, La., 319 So.2d 367 (1975).
SUMMERS, J., dissents and assigns reasons.
MARCUS, J., dissents and assigns reasons.