326 So.2d 871 (1975)
STATE of Louisiana, Appellee,
v.
Pamela Ann LIESK, Appellant.
No. 55586.
Supreme Court of Louisiana.
March 31, 1975.
On Rehearing January 19, 1976.
Dissenting Opinion February 20, 1976.
Rehearing Denied February 20, 1976.
*872 Robert Glass, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant, Mrs. Pamela Liesk, was convicted of attempted armed robbery, La.R.S. 14:27, 14:64, and sentenced to eight years at hard labor. She bases her appeal to this court on four assignments of error.
Assignment No. 1 (Bill of Exceptions No. 1)
After her arrest, the defendant was interrogated by the police. She dictated a statement, which was typed by the interrogating officer. However, after discussing the matter with her father, she refused to sign it.
She now contends that the proper preparation of her defense was prejudiced by the trial court's erroneous denial of her motions for oyer to obtain access to this written but unsigned statement. This assignment presents a very close issue as to whether prejudicial error was committed.
The defendant is correct in the following contentions:
1. Her motions for oyer should have been granted. The defendant is entitled to pre-trial inspection of her written confessions or statements. State v. Dorsey, 207 La. 928, 22 So.2d 273 (1945). For the same reasons of fairness in affording a defendant a proper opportunity to prepare a defense, the accused is also entitled to pre-trial inspection of electronically recorded statements, State v. Bendo, 281 So.2d 106 (La.1973), and of videotape recordings of a confession, State v. Hall, 253 La. 425, 218 So.2d 320 (1969). The present recordings are admissible in the same manner as is a written confession, for they possess the same accuracy and the same qualities of being "reliable, tangible evidence", State v. Hall,[1] 218 So.2d at 323. *873 For these reasons, the defendant is entitled to pre-trial inspection of a statement of the nature here involved (which, moreover, is admissible in evidece in the same manner as if it had been signed, see State v. Dierlamm, 189 La. 544, 180 So.2d 135 (1938)).
2. By a later ruling, the trial court suppressed the statement on the defendant's motion. This ruling was based on the failure of the interrogating officers to assure effective Miranda warnings before the interrogation. As the transcribed ruling made at the time shows, the trial court rejected the defendant's further contention that his statement was involuntary by reason of the defendant's mental condition. Thus, as the defendant contends, even though the statement itself was not admissible as part of the state's case, nevertheless, under Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), it might have been used in cross-examination to impeach her credibility.
Relying upon the above (1 and 2) reasons, the defendant contends that the failure to afford her pre-trial inspection of her statement irreparably prejudiced her defense. Because of her mental condition, she herself did not know the contents of the statement. Her sole defense of insanity at the time of the offense might, her counsel argues, have been prejudiced had she taken the stand and her credibility have been injured by use of the statement typed by the police officers but not seen or signed by her. Thus, it is contended, her constitutional right to take the stand was inhibited, Brooks v. Tennessee, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972), by this wrongful denial to her of pre-trial inspection of her statement.
However, the defendant's right to take the stand was not, in fact, inhibited by the denial of oyer to her of the statement.
The state had not notified her, prior to trial, of any intent to use the confession or inculpatory statement, as required by La.C.Cr.P. art. 768. Had the state attempted to use her typed but unsigned statement without giving such advance notice, even if only by way of impeachment, the trial court was required upon objection to deny such attempt: The failure to give notice to the defendant, as required by law, caused a prejudicial change of the position by defendant; she took the stand, in reliance upon the state's intent not to use the statement. State v. Jackson, 260 La. 561, 256 So.2d 627 (1972).
The issue is not free from doubt. Despite the probability of reversal upon appeal if the trial court incorrectly permitted use of the unsigned statement by way of impeachment, the defendant may properly have wished to rely upon evidence justifying an acquittal by reason of insanity (instead of subjecting herself to conviction by injection of such statement into the trial issues, if she indeed took the stand). The closeness of the issue once more illustrates the risk the State takes when it resists reasonable requests for pre-trial inspection alleged to be needed by the defense in the preparation of its case.
Nevertheless, on balance, for the reasons stated we are not persuaded that the present record illustrates that actual prejudice was caused the accused's defense under the circumstances here presented. This assignment of error does not, therefore, present under the record before us any reversible error.

Assignment No. 2 (Bill No. 5)
The defendant moved to quash the petit jury venire on the contention that the trial judge had, by asking for volunteers from the veniremen present, converted it into a self-selected group. Because of this selfselection, it is alleged, the venire was not a cross-section of the community.
The contention is based on the following circumstances:
La.C.Cr.P. art. 418 provides that the Orleans Parish Jury Commission shall *874 draw indiscriminately not less than 75 veniremen for service during each monthly session of each criminal court section. One hundred twenty-five veniremen were selected for service that month, of whom 120 individuals appeared. The maximum seating capacity of the courtroom is 55.
The trial court initially accepted the 49 veniremen who had volunteered for service that month. It then interviewed the remaining 71 veniremen as to their excuses. The trial court excused immediately any prospective juror with a valid medical excuse or who did not qualify, but it reserved decision as to other proferred excuses until all interviews had been completed.
At the conclusion of the interviews, the court excused those veniremen advancing the most serious reasons (age, work, vacation, illness in the family).
It refused to excuse eight others of those interviewed. The remaining petit jury venire thus comprised these eight plus the initial 49 prospective jurors who had not sought to be excused.
The defendant makes no showing, other than the above, that the trial court excused jurors arbitrarily or so as to deprive her of representation on the venire of any identifiable component of the population. Factually, there is no showing that the venire as finally constituted did not reflect a cross-section of the community as much as did the original venire indiscriminately selected from the randomly chosen general venire.
A petit jury venire shall not be set aside in the absence of fraud or some shown injury to the defendant. La.C.Cr.P. art. 419. The discretion of the trial court under La.C.Cr.P. art. 783 to excuse jurors from service will not be disturbed, in the absence of shown collusive material injury to the defendant. State v. Witherspoon, 292 So.2d 499 (La.1974). We find none here.

Assignment No. 3 (Bill No.4)
The defendant re-urges her contention that she, a female defendant, was deprived of her constitutional right to jury trial by the effective exclusion of women from the jury venire under the Louisiana law in effect prior to January 1, 1975. The defendant was tried and convicted in 1973.
The United States Supreme Court has indeed held that juries selected under pre-1975 Louisiana law were constitutionally deficient because of the effective exclusion of women from the venires. Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). However, it subsequently held that Taylor was not retroactive and did not apply to "convictions obtained by juries empanelled prior to the date of that decision." Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 705, 42 L.Ed.2d 790 (1974). Subsequently, despite the theoretic difference in contention when urged by a female defendant (as contrasted with the male defendants in Taylor and Daniel), the United States Supreme Court has denied certiorari as to the similar contention raised by a Louisiana female defendant. Devall v. Louisiana, 420 U.S. 903, 95 S.Ct. 820, 42 L.Ed.2d 832 (1974).
The assignment is therefore without reversible merit.

Assignment No. 4 (Bill No. 6)
Prior to final argument, the defendant filed a request for special charges to the jury instructing it as to the mandatory maximum and minimum penalties for the armed robbery charge and as to the effect of a verdict of not guilty by reason of insanity.
The defendant correctly contends that the trial court had the discretion to so charge the jury. According to the trial judge's per curiam, however, the trial court deliberately exercised its discretion not to *875 do so, since such instructions might confuse the jury and also since it felt, under the facts, the real issue before the jury was the defendant's mental condition at the time of the offense, the offense itself being admitted. The trial judge did, however, permit counsel to argue to the jury the effect of a verdict of not guilty by reason of insanity, i.e., that this would commit the accused to a mental institution and not set her free upon the streets.
A majority of this court has held that the trial court is not required to charge the jury as to the sentence-effects of verdicts, State v. Blackwell, 298 So.2d 798 (La.1974), nor as to the consequences of an acquittal on the ground of insanity, State v. Babin, 319 So.2d 367 (La.1975) (decided February 24, 1975).
Nor do we find, under the circumstances, any prejudicial abuse of the discretion of the trial court's failure to so charge, even though it did permit counsel to argue the effect of the insanity acquittal to the jury. Nothing in the instructions to the jury derogated from the argument of counsel based upon the effect of a verdict of not guilty by reason of insanity. The trial court's exercise of its discretion to permit this argument was favorable to the accused, and there is no showing that the failure to further instruct the jury as to this issue was prejudicial to the accused.
Accordingly, we do not find reversible merit to this assignment of error.

Decree
For the reasons assigned, we affirm the conviction and sentence.

Affirmed.
DIXON and CALOGERO, JJ., dissent.
BARHAM, Justice (dissenting).
The disposition of assignment of errors Nos. 1 and 4 are erroneous.

ON REHEARING
DIXON, Justice.
Defendant was convicted of the armed robbery of Rex Willet. From this conviction she appeals, perfecting four assignments of error. Because we find merit in one, we limit our discussion to that assignment.
During trial defense counsel timely requested the trial court to instruct the jury as to the effects of the verdict of not guilty by reason of insanity. Counsel sought to have the court read C.Cr.P. 654-658 in his charge to the jury.
The trial court ruled that he was not required to instruct the jury on the law governing the consequences of a verdict of not guilty by reason of insanity. At that time there were no decisions by this court determining whether C.Cr.P. 803 [1] required such an instruction.
In our original opinion in the case before us we held that the trial court did not err in refusing the requested charge. This holding was based on our original decision in State v. Babin, 319 So.2d 367 (La.1975), and the observation that "nothing in the instructions to the jury derogated from the argument of counsel based upon the effect of a verdict of not guilty by reason of insanity."
We granted a rehearing to decide whether the trial court erred in refusing to give the requested charge even though he allowed defense counsel to include the law of insanity in his closing argument. Upon reconsideration, we reverse our original opinion and hold that where the defendant properly pleads not guilty and not guilty by reason of insanity, upon a proper request the law pertaining to the consequences of a verdict of not guilty by reason of insanity must be included in the charge to the jury.
*876 Defendant did not refute the State's evidence that she had participated in the armed robbery. Her defense was that she was unable to discern right from wrong at the time she committed the armed robbery. Both the State and the defense presented testimony of medical experts on this issue. In order that the jury would not improvidently assume that to return a verdict of not guilty by reason of insanity would be to return the defendant to freedom, defendant requested the trial court to include C.Cr.P. 654-658, governing the effects of such a verdict, in his charge to the jury.
For the reasons expressed in State v. Babin, supra, on rehearing, we hold that the trial court erred in refusing the requested charge.
On July 25, 1975 this court held on rehearing in State v. Babin, supra, that upon request by defendant or by the jurors the trial court must instruct the jury on the effect of the verdict of not guilty by reason of insanity. That decision was based on the legislative mandate of C.Cr.P. 803 and the need to prevent a. "possible miscarriage of justice flowing from the imprisonment of one who should be hospitalized, because the jury does not understand the effects of its insanity verdict." Precisely these reasons compel our holding in the case before us.
On September 5, 1975 application for a second rehearing in State v. Babin was denied, hence the judgment in that case became final,[2] and this defendant's timely application for a rehearing was granted. We are not confronted with the question whetherState v. Babin is to be applied retroactively. The case before us stands on its own merit.
However, we note that, even under the apparent principles of retroactivity applied in the area of new found constitutional rights, the same result is reached. The opinions of the United States Supreme Court have developed no clear test or analysis governing the retroactivity of new found constitutional rights (see State v. Rester, 309 So.2d 321 (La.1975)), nor do these opinions control in the case before us. Nonetheless, the action we take is in accordance with opinions of that court providing that except where the so-called new rule goes to the very integrity of the factfinding process, Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), a retroactive application of the new rule is not compelled. It is not clear what the term "retroactive application" includes.[3] And where the so-called new rule does not go to the very integrity of the fact-finding process, the applicable test involves a balancing of considerations announced in Linkletter v. Walker, supra, and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).
Because our decision in Babin was to prevent the jury from refusing to return an insanity verdict for fear it would thereby necessarily return defendant to freedom, it is clear that the rule of Babin goes to the very integrity of the fact-finding process.
It is further contended that any error was cured by the trial court's allowing defense counsel to include the law relative to insanity *877 verdicts in his closing argument to the jury. We are not impressed with this argument. The typical jury charge informs the jury that it is duty bound to take the law as instructed by the court, and that the arguments of counsel do not amount to law in the case. Indeed, C.Cr.P. 802[4] requires such a charge. It further provides that the court, rather than counsel, shall charge the jury as to the law applicable in the case.
For these reasons, the conviction and sentence are reversed and set aside and the case is remanded for a new trial.
SANDERS, C.J., dissents. See my dissent in State v. Babin, 319 So.2d 367 (La., 1975).
SUMMERS, J., dissents and assigns reasons.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
I dissented in State v. Babin, 319 So.2d 367 (La.1975). My dissent in Babin was based upon this court's rationale in State v. Blackwell, 298 So.2d 798 (La.1974). For the same reason, I respectfully dissent in this case. Moreover, I do not consider that retroactive application of the rule of Babin is compelled. In my view, Babin should not be applied retroactively to trials conducted prior to the date that decision became final.
SUMMERS, Justice (dissenting).
I dissent for the reasons assigned in the dissenting opinion of the Chief Justice in State v. Babin, 319 So.2d 383 (La.1975), and my dissent in State v. Blackwell, 298 So.2d 798 (La.1973). See also State v. Lewis, 296 So.2d 824 (La.1974); State v. Harris, 258 La. 720, 247 So.2d 847 (1971); State v. Andrus, 250 La. 765, 199 So.2d 867 (1967); State v. Green, 244 La. 80, 150 So.2d 571 (1963); State v. Morris, 222 La. 480, 62 So.2d 649 (1952); Gambrell v. State, 238 Miss. 892, 120 So.2d 758 (1960); State v. Garrett, 391 S.W.2d 235 (Mo.1965); State v. Hood, 123 Vt. 273, 187 A.2d 499 (1963); Ann. 11 A.L.R.3rd 737; 11 A.L.R.3rd 732.
NOTES
[1] In State v. Hall, the state contended (as it does here) that the recorded statement was not subject to pre-trial inspection under the rule that oral statements are not. In rejecting the analogy and instead analogizing recorded statements as more similar to written statements, the court noted that such an oral statement can only be established by parol evidence. 253 La. 425, 218 So.2d 322. Whatever the merits of the reasons for refusing to extend pre-trial discovery to oral statements, see State v. Watson, 301 So.2d 653 (La.1974), they do not here apply.
[1] a defendant has specially pleaded insanity in accordance with Article 552, the court shall charge the jury with respect to the law applicable thereto." (C.Cr.P. 803).
[2] "A. Within fourteen days of rendition of the judgment of the supreme court, in term time or out, a party may apply to the supreme court for a rehearing. The court may act upon the application at any time.

"B. A judgment rendered by the supreme court becomes final when the delay for applying for a rehearing has expired and no application therefor has been made.
"C. In appellate courts other than the supreme court, the provisions of this article shall apply except that the delay for applying for a rehearing shall be five days.
"D. If an application for a rehearing has been made timely, a judgment of the apellate court becomes final when the application is denied." (C.Cr.P. 922).
[3] Compare Linkletter v. Walker, supra, and Tehan v. U.S. ex rel. Shott, 382 U.S. 407, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966), with Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). See also Justice Harlan's dissenting opinion in U. S. v. Mackey, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971).
[4] "The court shall charge the jury: "(1) As to the law applicable to the case; "(2) That the jury is the judge of the law and of the facts on the question of guilt or innocence, but that it has the duty to accept and to apply the law as given by the court; and

"(3) That the jury alone shall determine the weight and credibility of the evidence." (C.Cr.P. 802).