446 So.2d 497 (1984)
STATE of Louisiana
v.
Eugene BANKS.
No. KA-1153.
Court of Appeal of Louisiana, Fourth Circuit.
February 9, 1984.
Rehearing Denied March 21, 1984.
*499 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Beryl M. McSmith, Asst. Dist. Atty., New Orleans, for State of La., plaintiff-appellee.
Elizabeth W. Cole, New Orleans, for Eugene Banks defendant-appellant.
Before WARD, SCHOTT and BARRY, JJ.
WARD, Judge.
Eugene Banks was charged in the Criminal District Court of the Parish of Orleans with violating La.R.S. 14:65.1, which defines and prohibits purse snatching. A jury found Banks guilty as charged, and Judge Dennis Waldron sentenced him to serve seven years at hard labor.
Before trial Banks moved for production of exculpatory evidence. He also moved for production of prior recorded statements of the State's witnesses and, if witnesses statements were incorporated in the police report, then for production of the report of the investigating officersall for the specific purpose of cross-examination and impeachment. Alternatively, if the State did not produce exculpatory evidence, Banks requested the Trial Judge to search the State file to determine if it contained exculpatory evidence or statements of witnesses which may be inconsistent with trial testimony-in spite of the fact trial had not taken place. The State answered that it was not in possession of any exculpatory evidence, and the Trial Judge refused Banks's request to examine the State's file for it. The Trial Judge then denied Banks's motion for production of either the witnesses statements or the police report, and again declined to review the State's file.
During trial it became apparent there were no written statements of witnesses, although a description of the perpetrator was in the police report. Banks again moved for production of the report for the purpose of cross-examining or impeaching the State's witnesses. This motion was also denied. Banks did not request the Trial Judge to review the report in chambers, but because we believe this is implicit in the motion, we construe it also as a request for the Trial Judge to review the report in chambers and to compare any pre-trial statements with trial testimony to determine if there were material inconsistencies which would require production.
Banks first contends that the Trial Judge erred before trial when he denied the pre-trial motions for production of the police report. Banks argues that the Trial Judge at the very least should have reviewed the State's file and the report to determine if it contained either exculpatory evidence or witnesses' statements that would be useful for cross-examination. He contends denial of access to the witnesses' statements denies him the right to effectively cross-examine witnesses, thereby abridging his constitutional rights of confrontation and due process.
Banks next contends the Trial Judge erred during trial when he refused either to order the State to produce the police report after the witnesses testified or to examine the report himself to determine if the witnesses' pre-trial statement was materially inconsistent with the trial testimony.
Banks now asks that we remand the case to the Trial Judge and order that he review all witness' statements contained in the police report for material inconsistencies in witnesses' statements to determine if they should have been produced for cross-examination.
We do not believe the Trial Judge erred and we affirm.
At trial the State presented the testimony of three witnesses to the purse-snatching. Elnita Winchester, the victim, only saw the perpetrator from the back and was unable to give more than a general description of him and his clothing. She could not identify Banks as the purse-snatcher. Edward Martin, who chased the man for several blocks, could not identify Banks as the perpetrator. However, the third witness, *500 Monica Coleman, a ten year-old niece of the victim, told the investigating officer that she saw the purse-snatcher face-to-face, and she recognized him as a former neighbor, Eugene Banks, the defendant. The investigating officer did not ask Monica Coleman to give a written statement. Although her identification of Banks was incorporated into the police report, it is not clear whether the officer recorded her statements verbatim or summarized them, or whether the officer merely filled out an NOPD identification form.
We consider first, the State's duty to respond to discovery motions prior to trial. There is no constitutional requirement that the prosecution provide defense counsel with unlimited discovery of police investigatory files. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Except as expressly provided by statute, a defendant in Louisiana is not entitled to the discovery of reports, memoranda, or other internal state documents which are made by the district attorney or agents of the state, nor is he entitled to witnesses's statements made to the district attorney or agents of the state. La.C.Cr.P. art. 723.
The Constitution of the United States, however, requires that the State produce exculpatory evidence, upon the request of a defendant; that is, the State must produce material evidence favorable to the defense which supports innocence, Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and this includes evidence such as a grant of immunity which may cast serious doubt upon the testimony of a witness whose credibility may be determinative of guilt. Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).
In the instant case, Banks has not shown that the State possessed exculpatory evidence. On the other hand, he could not show the existence of exculpatory evidence because he has not had access to the district attorney's files. Nonetheless, we do not believe that he should have access. When the district attorney, as an officer of the court responds to pre-trial motions, those responses must be accepted as true. And for good reasons. If the district attorney knowingly conceals exculpatory evidence, this is prosecutorial misconduct and the charges against a defendant may be entirely dismissed. Additionally, the district attorney, as an officer of the Court and a member of the Bar, may then be disciplined by the Bar Association. Moreover, the district attorney has no reason to believe that if he conceals exculpatory evidence it will never be discovered; he does not have the only copy of police reports. Further, after a case has been concluded, police reports, although exempt from disclosure under the public record doctrine, must be produced at appropriate post trial hearings. State v. Babin, 319 So.2d 367, 375 (La.1975), Tate, J., concurring.
We believe when there is a question, out of an abundance of precaution, the district attorney should either produce the material or request a ruling by the Trial Judge, United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). State v. Babin, supra. We, however, do not believe a pre-trial inspection of the District Attorney's file is required as a matter of Constitutional right. As a practical matter if a Trial Judge is required to examine the State's file before trial in every instance where defendants specifically request statements of witnesses, there will be no end, for a defendant will make such a request in every case.
Hence, Banks has not shown the District Attorney suppressed exculpatory evidence; and the Trial Judge did not err when he refused to order production of the police report or when he declined to review it for exculpatory evidence or for statements of witnesses that may be favorable or useful in cross-examination.
The more interesting question is whether during trial the Trial Judge is required to examine the State's file in his chambers and compare a witness' pre-trial statement with the witness' trial testimony. In some instances, he must. State v. Ates, 418 *501 So.2d 1326 (La.1982), requires the State either to give a State witness' written statement to the defense for use in cross-examination, or, alternatively, to give it to the Trial Judge so that he can make an in camera examination of it, compare it with the trial testimony, and if there is a material discrepancy or omission that would create a reasonable doubt as to a witnesses credibility, the statement then must be given to the defendant for his use in cross-examination.
We, however, do not believe the rule of State v. Ates requires the Trial Judge to do so in the instant case. State v. Ates relied on United States Constitutional standards requiring disclosure of exculpatory evidence and production of witnesses's pre-trial statements, and it cites as support Giglio v. United States, supra, and State v. Sylvester, 388 So.2d 1155 (La.1980). State v. Sylvester had, in turn, relied heavily on Judge Tate's concurring opinion in State v. Babin, 319 So.2d 367 (La.1975). In Giglio, the Supreme Court held that a grant of immunity to a crucial witness for the government must be disclosed to a defendant for his use in cross-examination. Thus, information in possession of the Government or State that may cast serious doubt on the credibility of a crucial witness must be given to the defendant. Although Giglio does not mention a witness's written statement, they would of necessity be included when they are materially inconsistent with the witness's trial testimony and if they would create a reasonable doubt as to the credibility of the witness. In State v. Sylvester, the Louisiana Supreme Court approved Judge Tate's concurring opinion in State v. Babin, which suggested a witness' written pre-trial statement should either be given to the defendant or to the Trial Judge for his review to determine if it should be given to a defendant. In Babin, Judge Tate in turn relied on United States Court standards, incorporated in statute and now made part of 18 U.S.C. Sec. 3500, but more commonly known as the Jencks Act. State v. Babin, supra, at p. 374.
The Jencks Act requires production of statements made by government witnesses even when incorporated in official investigatory reports. But it defines a discoverable "statement" as "a written statement made by said witness and signed or otherwise adopted by him." 18 U.S.C. Sec. 3500(e)(1). A witness adopts a statement only when he approves as his own the investigating officer's summary, selections, and interpretations of the witnesses's oral statements. United States v. Scaglione, 446 F.2d 182 (5th Cir.1971). Approval by the witness must be comparable to signature of the written statement, and discussions between the officer and the witness of the general substance of what the witness said does not mean the witness has adopted the statement. Moreover, a witness does not adopt a statement when the person taking the statement does not read it to the witness or when the witness does not read what the officer has written. Goldberg v. United States, 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976).
On the other hand, a memorandum of an interview with a government witness which is not adopted by the witness is discoverable where it is a "substantially verbatim recital" of the witness's words and does not contain comments, impressions or opinions of the investigating officer. However, there is not a substantially verbatim recital merely because a report contains phrases or isolated sentences identical to language used by the witness. United States v. Cole, 634 F.2d 866 (5th Cir.1981). Generally, a police officer's investigative notes of a suspect's description are not a "substantially verbatim recital" of a witness' statement. March v. United States, 362 A.2d 691 (D.C.1976).
While not exactly analagous since the Jencks act requires production before trial, we believe the Jencks act standards are appropriate to determine when and what the Trial Judge must examine during trial, after a witness has testified, upon request by a defendant. Applying those standards, in the instant case Banks does not contend Monica Coleman signed a written *502 statement, nor has he shown that she adopted a statement in the police report, or that the officer made a "substantially verbatim recital" of her words. Hence, we do not believe the Trial Judge erred since Banks did not show that a discoverable statement was made to the investigating officer.
There are other reasons why we do not believe State v. Ates requires the Trial Judge to examine the State's file in this case. In Babin, Sylvester, and Ates, the signed written statements were the best evidence of any alleged material inconsistencies. On the other hand, when as in this case a witness makes an oral statement before trial, and when it is alleged to be inconsistent with trial testimony, the best evidence to impeach that witness is the testimony of the officer who took the statement, not the police report. To impeach the witness, it seems at the very least, that officer should be present in court to testify that the witness gave an inconsistent oral statement, and the officer's police report or notes are not sufficient, they are often made in haste, sometimes inaccurate, and a report may be prepared days or even weeks after the incident.
Officer Jacqueline Davis, the investigating officer, was present in court. Not only was she present, but she testified that when she arrived on the scene, Monica Coleman gave her a description of the purse-snatcher, yet counsel for Banks very deliberately declined to question Davis about Coleman's description. After studiously avoiding the opportunity to question her about Coleman's description, counsel cannot now claim that Davis's police report should have been turned over for cross-examination of Coleman.
While we believe an in camera inspection of the description contained in the report would have dispelled needless questions, we do not believe it was error for the Trial Judge to refuse to order production of the police report or to decline to review it.
Affirmed.