HALL, Judge.
After pleading not guilty and not guilty by reason of insanity, and waiving a jury trial, the appellant, Aubrey Mitchell, was convicted of aggravated rape (LSA-R.S. 14:42), and sentenced to life imprisonment. He now urges three assignments of error:
(1) The trial court erred in denying defendant’s request for production of Officer Betty Brookins’ police report concerning statements made by the complainant upon being questioned shortly after the offense;
(2) The trial court erred in sustaining the state’s objection to a question asked of defense witness, Dr. Strother Dixon, relating to her experiences with persons who had the same mental disease as defendant; and
(3) The trial court erred in denying defendant’s motion for post-verdict judgment of acquittal.
We find no merit to these assignments and affirm appellant’s conviction.

The Facts

On February 22, 1983, appellant, clad only in yellow shorts, went to a 7-11 store located at the intersection of Hollywood and Prentiss. He asked the store clerk for a dime, and when the clerk indicated that she did not have one, appellant was given a dime by a customer. Appellant then went outside the store in the direction of the public telephones. He returned shortly, asking the same customer for another dime, but this time was refused. He then went to the arcade area of the store, bor *93 rowed two nickels from customers there, and returned outside. A short time later, he came back into the store, when no other customers were present, and asked the store clerk to call his sister in Greenwood. The clerk asked him if the call was long distance, and when he indicated that it might be, the clerk told him that she could not make long distance calls on the store phone. Appellant then left the store again. Shortly thereafter, at approximately 10:00 p.m., the victim drove up to the store and noticed appellant looking at her. He followed her into the store, got a coke from the cooler and opened it, and then said to the victim, “You did say that you were going to buy a coke for me.” He then walked outside without paying for the drink.
While the victim was paying for her purchases, appellant came back into the store and was told by the clerk that he would have to leave since he had no money. Appellant suddenly stripped the victim’s keys from her hand and threw them behind the counter, then grabbed the can of mace she had in her other hand and pulled its top off. He then proceeded to grab the victim and pull her out of the store. Although she tried to free herself, and to hold onto objects she passed near, she was dragged, kicking and screaming, to an area behind the store where appellant removed her clothing and raped her. The appellant was still on top of the victim when the police arrived and apprehended him.
The trial judge found that the state proved beyond a reasonable doubt that vaginal intercourse did occur without the victim’s consent, and that the victim resisted the act to the utmost, but was overcome by force. Thus the court found the state met its burden of proof on the criminal charge of aggravated rape.
The court also found that although the appellant was suffering from a mental disease or defect, and was sometimes in a psychotic state, the defendant, nevertheless, had not met his burden of showing by a preponderance of the evidence that he did not know the difference between right and wrong at the time of the offense.
Assignment of Error No. 1 — Victim’s Statements to Police Officer
While cross-examining the victim, defense counsel elicited information that shortly after the rape occurred, the victim spoke with police officer Betty Brookins concerning the incident, and that Officer Brookins made written notes of the victim’s statements. Defense counsel then requested production of Officer Brookins’ report for use in cross-examining the victim. This request was denied. Defense counsel urges that any inconsistent statements made by the victim shortly after the incident would be highly relevant to the issue of whether the degree of force used by the defendant and resistance made by the victim was sufficient to constitute aggravated rape.
Generally, a defendant is not entitled to inspection of statements made by witnesses, other than the defendant, to the district attorney or to agents of the state. LSA-C.Cr.P. Art. 723. However, as the Louisiana Supreme Court stated in State v. Ates, 418 So.2d 1326 (La.1982):
“Under the United States Supreme Court decision of Brady v. Maryland, the State, upon request, must produce evidence that is favorable to the accused where it is material to guilt or punishment. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This rule has been expanded to include evidence which impeaches the testimony of a witness where the reliability or credibility of that witness may be determinative of guilt or innocence. Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Where a specific request is made for such information and the subject matter of such a request is material, or if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the information to the trial judge. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).”
*94 In Ates, during cross-examination of the chief prosecution witness, defense counsel moved for production of prior statements of the witness which counsel wished to use for purposes of impeachment. Counsel also requested an in camera inspection. His requests were denied.
The supreme court found that because defendant’s request was specific, and because this important witness’s testimony went directly to the issue of guilt or innocence, an in camera inspection was warranted. The court then remanded the ease to the trial court for determination of whether the witness’s written or recorded statements contained inconsistencies with her trial testimony, and, if so, whether the evidence was material to the defendant’s guilt or punishment, employing the “totality of the facts and circumstances” standard as stated in State v. Sylvester, 388 So.2d 1155 (La.1980).
The rule of State v. Ates, requiring disclosure or in camera inspection of a key witness’s written or recorded statement, was found inapplicable to the factual situation existing in State v. Banks, 446 So.2d 497 (La.App. 4th Cir.1984). There, the only witness who saw defendant face to face gave a description to police which was incorporated into a police report. Whether the officer recorded the witness’s statements verbatim or summarized them, or whether the officer merely filled out an identification form was not clear. During trial the trial judge refused defendant’s request to order the state to produce the report. Although no separate request was made for an in camera inspection of the report, the appellate court believed such a request to be implicit in the motion for production, and viewed defendant’s request as one for review by the trial judge in chambers, comparing pre-trial statements with trial testimony in order to determine if material inconsistencies existed.
Nevertheless, the appellate court did not believe the trial judge erred. The court analogized to the Jenek’s Act, applicable in federal courts, which requires production of statements made by government witnesses, even when incorporated in official investigatory reports. The court recognized that the analogy was not exact since the Jenck’s Act required production before trial, but believed that the act’s standards were appropriate for determining when and what a trial judge must examine during trial after a witness’s testimony and upon defendant’s request. As to what constitutes a discoverable statement, the court noted:
“[The act] defines a discoverable statement as a written statement made by said witness and signed or otherwise adopted by him. 18 U.S.C. Sec. 3500(e)(1). A witness adopts a statement only when he approves as his own the investigating officer’s summary, selections, and interpretation of the witness’s oral statements. United States v. Scaglione, 446 F.2d 182 (5th Cir.1971). Approval by the witness must be comparable to signature of the written statement, and discussions between the officer and the witness of the general substance of what the witness said does not mean the witness has adopted the statement. Moreover, a witness does not adopt a statement when the person taking the statement does not read it to the witness or when the witness does not read what the officer has written. Goldberg v. United States, 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976).
However, the court also noted that a memorandum of an interview with a government witness need not always be adopted by the witness. Such a memorandum is still discoverable when:
“it is a substantially verbatim recital of the witness’s words and does not contain comments, impressions or opinions of the investigating officer. However, there is not a substantially verbatim recital merely because a report contains phrases or isolated sentences identical to language used by the witness. United States v. Cole, 634 F.2d 866 (5th Cir.1981).”
Applying the standards as set out above to the situation in Banks, the court first *95 observed that the defendant did not contend that the witness signed a written statement or adopted a statement in the police report, or that the officer made a “substantially verbatim recital” of her words. Thus the defendant failed to show that a discoverable statement was made to the investigating officer. Furthermore, the court found that the testimony of the police officer who took the statement was the best evidence to impeach the witness. Reports and notes were not considered sufficient for impeachment because they are often made in haste and are sometimes inaccurate, and because a report might be prepared days or even weeks after the incident. Finally, the court noted that the defense counsel deliberately avoided the opportunity to question the police officer about the description when the officer was on the stand. Thus counsel could not then claim the police report should have been turned over for cross-examination purposes.
The facts in the present case are much closer to the facts of Banks than those of Ates. As in Banks, there is no written statement signed by the witness or adopted by her, and there was no attempt by defense counsel to question the police officer, who testified for the defense at trial, about the report or about whether her written notes were a “substantially verbatim recital” of the witness’s words. Ordinarily, such investigative notes will not be a verbatim recital. Although the victim testified the officer “wrote down everything I said”, she was not in a position to know what the officer actually wrote down. The officer’s testimony, readily available to the defense, would have been the best evidence of whether the notes made by the officer were a “substantially verbatim recital” of what the witness said. Thus, as in Banks, defendant failed to show that the police report was discoverable or should have been produced for inspection by the defense counsel or the judge.
Since there is no showing that the report was discoverable, the report falls under the general rule of LSA-C.Cr.P. Art. 723 denying discovery or inspection of statements of witnesses to agents of the state, and defendant’s assignment of error is without merit.
We add, however, as did the court in Banks, that an inspection of the officer’s notes by the judge would have “dispelled needless questions”, and the better procedure in cases such as this is for the judge to inspect the notes or report sought. If it is determined by the judge that the item should not be produced, the item should be sealed and made a part of the record so as to be available for appellate review.
Assignment of Error No. 2 — Testimony of Dr. Dixon
Defense counsel on direct examination attempted to ask Dr. Strother Dixon about a particular incident in which the doctor had been attacked by a psychotic individual. Defense counsel wanted to show experiences upon which Dr. Dixon based her conclusion that the appellant could appear normal but still be psychotic. The state’s objection to the relevancy of the particulars of the attack incident was sustained. Defense counsel contends that he has been denied the opportunity to show the facts underlying the expert’s opinion, and to show that attacks by seemingly normal but still psychotic individuals do take place.
The trial judge’s ruling on the relevancy of evidence is not to be disturbed absent a clear abuse of discretion. State v. Pettaway, 450 So.2d 1345 (La.App. 2d Cir.1984); State v. Williams, 431 So.2d 885 (La.App. 2d Cir.1983). Here, no abuse of discretion occurred. Dr. Dixon’s testimony was relevant only to the issue of the defendant’s sanity. The essential question in determining legal sanity is whether the accused knew the difference between right and wrong at the time of the offense (LSA-R.S. 14:14), and not whether the individual was psychotic at that time. While Dr. Dixon’s testimony makes clear her opinion that the defendant was psychotic at the time of the offense, her testimony makes equally clear that she had no opinion about whether the defendant did not know the difference between right and wrong at that time. Thus Dr. Dixon’s testimony specifically *96 avoided giving an opinion on the ultimate issue; the trial judge could have fully believed her testimony but still found the defendant sane. More particularly, excluding evidence which could have bolstered Dr. Dixon’s opinion that the defendant was actually psychotic at the time of the offense would only have importance in a situation where Dr. Dixon’s opinion was at odds with the testimony of other expert witnesses, or at least where the trial judge apparently did not believe Dr. Dixon’s testimony. However, the expert testimony for both the defense and the prosecution was to the effect that the defendant was probably psychotic at the time of the offense. Furthermore, in the trial judge’s reasons for judgment, he stated there was no question whatsoever in his mind that the defendant was suffering from a mental disease or defect. Later, when summing up his findings on the issue of sanity, he stated:
“1 believe, from the factors that I have indicated and from the expert testimony that I have heard in this case, as well as the lay testimony, that the facts and circumstances of this case indicate that the defendant, although suffering from a mental disease or defect, and sometimes in a psychotic state, could at the time of this offense, with reference to the offense in question, could, in fact, distinguish right from wrong in his conduct. (Emphasis added)
The judge’s statements give no indication that he disbelieved Dr. Dixon or the other psychiatric experts who testified that the defendant suffered from a mental disease or defect, and was probably psychotic at the time of the offense. Since there is no reason to believe that admitting testimony, which could have been marginally relevant at best, would have had any effect whatever upon the determination of the issue of defendant’s sanity, the second assignment of error is without merit.
Assignment of Error No. 3 — The Motion for Post-Verdict Judgment of Acquittal
After appellant’s conviction, his counsel filed a motion for post-verdict judgment of acquittal. The grounds set forth were:
(1) The evidence presented at trial, viewed in a light most favorable to the prosecution, did not support a finding of guilty as charged beyond a reasonable doubt because the force used was not great enough to constitute the offense of aggravated rape; and
(2) A rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could not have come to the conclusion that defendant failed to prove by a preponderance of the evidence that he was insane at the time of the offense.
The defendant’s motion was denied.
In LSA-R.S. 14:42, aggravated rape is defined as follows:
“Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
“(1) Where the victim resists the act to the utmost, but whose resistance is overcome by force; or
“(2) Where the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution; or
“(3) Where the victim is prevented from resisting the act because the offender is armed with a dangerous weapon; or
“(4) Where the victim is under the age of twelve years. Lack of knowledge of the victim’s age shall not be a defense.
“Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.”
Applying the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the question presented under the facts of this case would be whether, viewing the evidence in a light most favorable to the prosecution, a reasonable trier of fact could have found *97 that vaginal sexual intercourse occurred without lawful consent of the victim under circumstances where the victim resisted the act to the utmost but had her resistance overcome by force. Here, the issue is not whether nonconsentual sexual intercourse took place, but whether the victim resisted to the utmost. The victim’s testimony, corroborated in part by the store clerk’s testimony, strongly indicates that she did indeed resist to the utmost. She kicked, screamed, and grabbed onto nearby objects to prevent her removal from the store. She testified that once outside the store she continued to resist defendant, even though during her ordeal he threw her against a wall, struck her more than once, and at one point stepped on her throat, cutting off her air.
Certainly, from this evidence a rational trier of fact could have found that the victim, who weighed less than 100 pounds, resisted to the utmost, but had her resistance overcome by the defendant’s force.
Defendant cites State v. Turnbull, 377 So.2d 72 (La.1979), as stating that forcible rape differs from aggravated rape only with regard to the amount or degree of force employed by the offender. Defendant then proceeds to argue that the force involved in this case was insufficient to constitute aggravated rape as no threats of great and immediate harm were made, no dangerous weapon was used, and no major injuries or trauma resulted from the rape.
Appellant’s reference to Turnbull provides an incomplete recital of the statement made there. The complete statement reads “The only distinction between aggravated and forcible rape is the degree of force employed and the extent to which the victim resists.” (Emphasis added) Here the victim’s resistance is the key to the finding of aggravated rape. While it is true that no threats of great and immediate bodily harm were made, and that no dangerous weapon was used, these factors need not be. present as the finding of aggravated rape is based on paragraph (1) of LSA-R.S. 14:42 rather than paragraph (2) or (3). As noted above, paragraph (1) addresses the very situation encountered in the present case; the victim resisted to the utmost but had her resistance overcome by force. Furthermore, while major injuries and trauma can help provide evidence of the victim’s resistance, neither is statutorily required, as other kinds of evidence can also provide such proof. In this case the victim’s testimony corroborated by that of the store clerk provided that proof. Thus the first ground set forth by defendant for a post-verdict judgment of acquittal is found to be without merit.
The other ground defendant sets forth concerns the trial court’s finding that the defendant failed to show by a preponderance of the evidence that he did not know the difference between right and wrong at the time of the offense. As this court stated in State v. Pettaway, supra:
“On appeal, the relevant inquiry by the reviewing court is whether the defendant adduced evidence of his insanity at the time of the offense such that any rational trier of fact viewing the evidence in the light most favorable to the prosecution could conclude that defendant had not proved by a preponderance of the evidence that he was insane at the time of the offense.” [1]
*98 Applying this inquiry in the present case, the trial judge could have found the defendant failed to carry his burden.
While there was agreement among the expert witnesses who testified at trial that appellant was a paranoid schizophrenic, and was often psychotic, only two of these experts expressed the opinion that the appellant was legally insane. Both Dr. Norman Mauroner and Dr. Joe B. Hayes were of the opinion that the defendant did not know the difference between right and wrong at the time of the offense. On the other hand, Dr. Lawrence E. L’Herisson, testifying for the state, was of the opinion that appellant did know the difference between right and wrong at the time of the offense. His testimony was based on the medical records of appellant and on two interviews with appellant. The trial judge stated that he was most impressed with Dr. L’Herisson’s testimony, finding the doctor’s explanations both thorough and easily understood.
In addition to the expert testimony, the trial judge also considered the lay witness testimony. This testimony brought out incidents of bizarre behavior on the part of the appellant that were consistent with the diagnosis of schizophrenia.
Finally, the trial judge considered the actions of the defendant just before the offense was committed. He noted that the appellant apologized to the store clerk for his appearance and asked, rather than demanded, ten cents — the correct amount to make a phone call. The judge also noted that the appellant did not attack the victim until only the victim and the store clerk were in the store, and that he took the victim’s keys and mace which were means of escaping and repelling the ■ appellant. He also took the victim, not just outside, but behind the store and through a fence to a dark place where he tried to keep her quiet as he attempted to rape her.
An examination of the trial judge’s review of the expert witnesses’ testimony as to the defendant’s medical history and mental condition, his review of the other witnesses’ testimony, and his review of the facts surrounding the commission of the offense, leads to the conclusion that the trial 'judge, as a rational trier of fact, could have concluded that the defendant failed to prove by a preponderance of the evidence that he did not know the difference between right and wrong at the time of the offense. Thus the second ground set forth by defendant for a post-verdict judgment of acquittal is without merit.
In accordance with the reasons set out above, appellant’s assignments of error are found meritless and appellant’s conviction and sentence are affirmed.

. Probably inadvertently, the standard of review was incorrectly stated by the Louisiana Supreme Court in State v. Brogdon, 426 So.2d 158 (La.1983). There the court stated the standard as:
"whether the defendant adduced evidence of his insanity at the time of the offense such that any rational trier of fact could have concluded that he carried the burden of proving his insanity by a preponderance of the evidence.”
This standard of review would require reversal of a conviction where a reasonable juror could have concluded the defendant carried his burden of proof, even though the evidence was such that a reasonable juror could have concluded the defendant failed to carry his burden of proof. This version of the review standard would have the effect of tipping the scales in favor of a finding of insanity in close cases, and would conflict with the legal presumption of LSA-R.S. 15:432 that a defendant is sane and responsible for his actions.
*98 In the more recent case of State v, Nealy, 450 So.2d 634 (La.1984), the supreme court stated the standard of review as:
“whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that defendant had not proved by a preponderance of the evidence that he was insane at the time of the offense.” The inclusion of the phrase “beyond a reason-
able doubt” in addition to “by a preponderance of the evidence", seems to incorrectly alter the proper standard of review. The state, of course, has the burden of proving each element of a crime beyond a reasonable doubt (LSA-R.S. 15:272). However, the defendant, rather than the state, has the burden of establishing insanity by a preponderance of the evidence (LSA-C. Cr.P. Art. 652); the state is not required to offer proof of sanity. State v. Narcisse, 426 So.2d 118 (La.1983). Thus, the phrase “beyond a reasonable doubt” seems out of place in the Nealy statement of the standard of review.
This court believes the standard of review is correctly set forth in State v. Pettaway, supra, which is in line with the standard as stated in State v. Claibon, 395 So.2d 770 (La.1981); State v. Roy, 395 So.2d 664 (La.1981), per curiam on application for rehearing; and other Louisiana Supreme Court cases.