581 So.2d 747 (1991)
STATE of Louisiana
v.
Norman CLARK.
No. 88-KA-0629.
Court of Appeal of Louisiana, Fourth Circuit.
May 30, 1991.
*749 Harry F. Connick, Dist. Atty., Val M. Solino, Asst. Dist. Atty., New Orleans, for appellee.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for appellant.
Before CIACCIO, WILLIAMS and PLOTKIN, JJ.
WILLIAMS, Judge.
Defendant was indicted for the second degree murder (LSA-R.S. 14:30.1) of Roosevelt Percy on January 17, 1983. He pleaded not guilty, and was tried by a twelve-person jury on August 30-31, 1983. The jury found defendant guilty of manslaughter. The State filed a multiple bill, and defendant was adjudicated a third offender. He was sentenced on July 11, 1985, to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Defendant was granted an out-of-time appeal on January 6, 1988.

FACTS
On the night of January 16 and early morning of January 17, 1983, defendant, whose nickname was "Tiny Man," had an argument with Roosevelt Percy at Rose's Tavern located at the corner of Thalia and South Dorgenois. Roosevelt's brother Michael got him out of the bar and was talking with him outside when another brother, Clifford, joined them. Shortly thereafter, Roosevelt and Clifford went back into the bar while Michael left to park his car. After parking, Michael headed back to Rose's bar where he saw Roosevelt and Clifford coming out. Michael then saw defendant emerge from the bar and strike Roosevelt several times with a gun and then shoot Roosevelt. Roosevelt ran across the street where he collapsed in a courtyard. Michael ran to his mother's apartment to telephone an ambulance.
Michelle Percy, Roosevelt's sister, was looking out of her living room window and across the street in front of Rose's where she could see one man striking another man. She heard shots and saw one of the men, whom she then recognized as Roosevelt, run across the street. She ran out to where Roosevelt lay in the courtyard. Roosevelt said the name, "Tiny Man." Michelle then left to call an ambulance.
When Michael arrived at his mother's apartment, he saw his brother Clifford lying in the hallway. Clifford had also been shot. Clifford testified that he went into Rose's to ask defendant what the argument was about, but defendant did not respond. As Clifford left the bar, defendant ran past him. When Clifford got outside, defendant's nephew Milton Clark, whose nickname was "Man," told Clifford he (Clifford) had nothing to do with the situation. Clifford saw defendant strike Roosevelt about the head with a pistol then shoot him. Defendant fired a shot at Clifford as he (Clifford) ran toward defendant and grabbed the gun. Clifford heard a shot, turned around and saw Milton pointing a gun at him. Clifford ran back into the bar as Milton fired two more shots. One of the shots struck Clifford. Clifford left the bar and arrived at his mother's apartment where he collapsed.
Michael returned to Roosevelt, who repeatedly said "Tiny Man." Roosevelt died shortly thereafter. The Percys knew defendant only by his nickname. They selected his photograph from a lineup as the person they knew as "Tiny Man."
Defendant's girlfriend, daughter and mother (Milton Clark's grandmother) all testified that Milton told them he was the one who shot Roosevelt. Milton denied their statements. Kaye Bursett, who was at Rose's at the time of the shooting, testified that she saw Milton shoot Roosevelt. Herbert Johnson testified that after the first confrontation between defendant and Roosevelt, he (Johnson) and Milton went to Milton's home where Milton got a gun. He and Milton returned to Rose's bar and Milton gave the gun to defendant. The fight *750 between defendant and Roosevelt resumed. Milton joined in and obtained the gun from defendant. Johnson testified that Milton shot Roosevelt. He also testified that when Clifford came out of Rose's, Milton shot him as well.

ERRORS PATENT
A review of the record reveals no errors patent.

PHOTOGRAPHIC LINEUP
Defendant complains a mistrial should have been granted when the photographic lineup containing his picture was introduced into evidence and when Detective John Dillman testified that the picture had been selected from the lineup. He argues that the lineup was unnecessary since the Percys already knew him. Further, the photograph shows him as a much younger man. This fact, coupled with the testimony of Detective Dillman, suggested to the jury that he had been previously arrested. Therefore, the introduction of the photographic lineup was a prohibited comment on other crimes, thereby entitling defendant to a mistrial under LSA-C.Cr.P. art. 770(2).
During trial, defendant objected to Detective Dillman's testimony that Michelle and Michael Percy selected defendant's photograph from the lineup. The objection was based on the hearsay nature and lack of responsiveness of the testimony, and defendant moved for a mistrial. The trial court sustained the objection, but instead of granting the mistrial, the court admonished the jury. The photographic array was not introduced into evidence until after the close of the State's case, and the motion for mistrial based on the introduction of the photographs was not made until the close of defendant's case. The trial judge stated that based on an earlier bench conference the motion would be considered as timely. The trial court denied the motion for mistrial.
Under LSA-C.Cr.P. art. 770(2), a mistrial must be granted when a judge, district attorney or court officer refers either directly or indirectly to other crimes allegedly committed by the defendant as to which evidence is not admissible. In State v. Davis, 407 So.2d 702 (La.1981), the defendant complained about the introduction into evidence of a seven year old mug shot in which there was a plaque around his neck reading "Department of Louisiana" and the date it was taken. The Supreme Court found that under C.Cr.P. art. 770(2) the defendant was not entitled to a mandatory mistrial because identification was a highly material issue and the discrepancy in the dates was not spelled out for the jury. It could not be plainly inferred that the prosecutor was commenting on other crimes committed by the defendant.
We find that the introduction into evidence of defendant's photograph did not constitute either a direct or indirect reference to other crimes committed by defendant. There was no indication on the photograph that it was connected with any prior crime, and the fact that defendant appears younger in the photograph does not lead to the conclusion that it was connected to prior criminal acts. It cannot be plainly inferred that the State commented on other crimes committed by defendant. Therefore, defendant is not entitled to a mistrial under C.Cr.P. art. 770(2).
As to Detective Dillman's testimony regarding the photographic lineup, that testimony cannot be considered as a comment on other crimes since Detective Dillman only stated that the witnesses selected this photograph. Neither assignment of error has merit.

RECANTATION
In his second assignment of error, defendant complains that the trial court erred in denying his motion for a new trial based on the alleged recantation by Clifford Percy of his trial testimony. At trial, Clifford testified that the defendant shot the victim. However, in December, 1986 Clifford told Lottie Irving, defendant's former girlfriend, that Milton Clark was the one who shot his brother. By this time, Milton Clark was dead. Ms. Irving convinced Clifford to speak with defendant's attorney, Clyde Merritt. In May, 1987, Clifford went to Merritt's office and stated that Milton *751 shot Roosevelt Percy. The interview was not recorded or transcribed, and Clifford did not sign any sworn statements. Clifford was to return to Merritt's office where he would have his own attorney and a sworn statement would be taken. However, three days after the initial interview, Clifford was fatally shot. Both Ms. Irving and Merritt testified at the motion for new trial. Rosemary Burmah, defendant's girlfriend, testified that she spoke with Clifford after finding out from Clifford's girlfriend that he wanted to come forward but wanted to know what was in it for him. Ms. Burmah testified she told Clifford there was nothing in it for him.
Diane Percy, Clifford's sister, testified that her brother had never changed his story regarding who shot Roosevelt. She further testified that she overheard a phone conversation between Clifford and Ms. Burmah in which Ms. Burmah told Clifford she would "take care of him."
LSA-C.Cr.P. art. 851 provides:
The motion for a new trial is based on the supposition that injustice has been done the defendant and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
Where the motion for new trial is based on newly discovered evidence, the following four requisites must be met: 1) the evidence must have been discovered since the trial; 2) the failure to learn of the evidence must not be due to the defendant's lack of due diligence; 3) the evidence must be material to the issues at trial; and 4) the evidence must be of such a nature that it would probably produce an acquittal in the event of a retrial. LSA-C.Cr.P. art. 854; State v. Talbot, 408 So.2d 861 (La. 1980); State v. Ward, 542 So.2d 737 (La. App. 4th Cir.1989).
In State v. Prudholm, 446 So.2d 729, 736 (La.1984), the Supreme Court stated; "[R]ecantations are highly suspicious and, except in rare cases a motion for new trial should not be granted on the basis of a recantation since that disclaimer is tantamount to admission of perjury so as to discredit the witness at a later trial."
In State v. Ward, supra, a witness allegedly recanted his trial testimony to the defendant's attorneys, but he refused to testify at the hearing on the defendant's motion for new trial. The defendant's attorney testified that the witness, in contradiction of his trial testimony, stated he was not an eyewitness to the crime. The witness allegedly told defendant's attorney that he testified at trial as he did because the State threatened him. The trial court denied the defendant's motion for new trial. This court found no abuse of discretion.
In order to reverse the trial court's denial of a motion for new trial, the reviewing court must find the denial was arbitrary and a palpable abuse of the trial court's discretion. State v. Tyler, 342 So.2d 574 (La.1977), cert. den., 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977). Great weight is to be attached to the exercise of the trial court's discretion which should not be disturbed on review even if *752 reasonable persons could differ as to the propriety of the trial court's action. State v. Talbot, 408 So.2d 861 (La.1981).
We find that the trial court did not abuse its discretion in denying the motion for new trial. The alleged recantation took place over three years after the defendant's trial and under somewhat suspicious circumstances. The recantation was initially made to defendant's girlfriend and former girlfriend. Ms. Burmah's testimony indicates that Clifford's recantation to her (defendant's girlfriend) was motivated by personal gain. Moreover, Diane Percy's testimony indicates that Ms. Burmah promised to "take care of" Clifford if he recanted. The circumstances surrounding Clifford Percy's recantation do not indicate trustworthiness. This assignment of error lacks merit.

MULTIPLE BILL
Defendant complains this court erred in granting the State's writ application and ordering the trial court to sentence him as a third offender. We are compelled to vacate our previous order in Writ No. K-2759 under State v. Jackson, 298 So.2d 777 (La.1974). The defendant's sentence as a second felony offender is reinstated.
The multiple bill against the defendant was based on a 1957 guilty plea to attempted murder and a 1964 conviction for manslaughter. On March 27, 1984, defendant was adjudicated a second offender and sentenced to thirty-five years at hard labor. The State filed writ application (K-2157) with this court. The application was denied because the minute entry from defendant's 1957 guilty plea did not affirmatively show he was represented by counsel.
The State moved for a rehearing in the trial court on the multiple bill. The trial judge refused to find defendant a multiple offender after the State submitted an additional minute entry showing that defendant was represented by counsel at his 1957 guilty plea. The State again applied to this court for writs. This court granted the writ (K-2759), finding the minute entry of November 13, 1957 clearly showed defendant was represented by counsel when he pled guilty. This court held the State carried its burden of proof and that the trial court should have sentenced defendant as a triple, not a second, offender in accordance with LSA-R.S. 15:529.1. The trial court resentenced defendant to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
Defendant argues that this court's order in K-2759 is contrary to State v. Holmes, 504 So.2d 589 (La.App. 4th Cir.), writ den., 506 So.2d 1223 (La.1987), decided two years after K-2759.
In Holmes, the trial court adjudicated defendant a second offender even though the State presented evidence he was a fourth offender. In affirming the sentence, this court stated:
The courts have held that a multiple bill of information is not a new bill of information charging a new offense, but merely a method of informing the court of defendant's prior offenses and requesting an enhancement of sentence. State v. Jackson, supra. The determination of sentence is within the sound discretion of the trial judge. State v. Polk, 258 La. 738, 247 So.2d 853 (1971).

Id., 504 So.2d at 590.
State v. Jackson, 298 So.2d 777 (La.1977), relied upon by this court in Holmes, supra, provides that "the charge as a second offender is a lesser, but included, offense of the charge as a third or fourth offender." Thus, the determination of the particular status of an habitual offender, whether second, third or fourth offender status, is the prerogative of the trial court.[1] Accordingly, this court's previous order mandating the trial court to sentence defendant as a triple offender is vacated. *753 Defendant's previous sentence as a second offender is reinstated.

PRO SE ASSIGNMENTS OF ERROR

DYING DECLARATION
Defendant complains that the trial court erred in admitting into evidence the dying declaration of Roosevelt Percy while allowing the State to suppress evidence which would have impeached the testimony of Michelle Percy.
A dying declaration is admissible as long as the proper foundation is laid. State v. Unger, 362 So.2d 1095 (La.1978). Defendant does not argue that the dying declaration is inadmissible because of the State's failure to lay a proper foundation. Defendant's complaint goes more to the weight to be given Michelle's testimony rather than to its admissibility.
Michelle Percy testified that she ran to Roosevelt and said "Don't die," to which Roosevelt replied he was not going to die. Michelle testified she then asked Roosevelt who did this to him, and Roosevelt replied "Tiny Man." The impeachment evidence allegedly suppressed by the State was a statement given by Michelle to Detective John Dillman which was to the effect that when Michelle ran up to Roosevelt all he could say was "Tiny Man."
Defendant in fact availed himself of the opportunity to impeach Michelle's testimony through the use of the transcript of her testimony from the trial of Milton Clark. On cross-examination, counsel for defendant attempted to impeach Michelle's testimony with the testimony she had given at the trial of Milton Clark for the shooting of Clifford Percy. At Milton Clark's trial, Michelle testified that she ran to Roosevelt and all he said to her was "Tiny Man" and she said "Don't die." Roosevelt died shortly thereafter. That testimony was substantially similar to the statement given to Detective Dillman. Defendant's rights were not prejudiced by his not being allowed to impeach Michelle's testimony with her statement to the police. This assignment of error is without merit.

DUE PROCESS
Defendant complains the trial court denied him due process of law by denying him evidence with which to impeach the testimony of Michael Percy. He argues he was denied admission of various prior inconsistent statements made by Michael which show Michael gave false testimony and which, therefore, are Brady[2] material. The statements in question were allegedly given by Michael to Officer William Lore and to Detective John Dillman. The trial court conducted an in camera inspection of the statements, but the transcript does not show that the trial court made any ruling. A reading of the cross-examination of Michael does not show that any statements were used to impeach him, and thus it can be assumed that the trial court found no inconsistencies which would impeach Michael's testimony.
Except as expressly provided by statute, a defendant in Louisiana is not entitled to the discovery of reports, memoranda, or other internal state documents which are made by the district attorney or agents of the state, nor is he entitled to witnesses' statements made to the district attorney or agents of the state. LSA-C.Cr. P. art. 723; State v. Banks, 446 So.2d 497, 500 (La.App. 4th Cir.1984). However, the Constitution of the United States requires that the State produce exculpatory evidence upon the request of a defendant.
This court in Banks noted that under State v. Ates, 418 So.2d 1326 (La.1982) the prosecution must turn the requested statement over either to the defendant or to the judge for an in camera inspection for comparison with the witness' trial testimony to determine if there is a material discrepancy or omission creating reasonable doubt as to that witness' credibility. The statement constitutes Brady material if its use by the defendant would have created a reasonable doubt about the defendant's guilt that did not otherwise exist. *754 State v. Sylvester, 388 So.2d 1155 (La. 1980).
In determining what constitutes a "statement" by a witness, the court in Sylvester relied heavily on Judge Tate's concurring opinion in State v. Babin, 319 So.2d 367 (La.1975). In Babin, Judge Tate in turn relied on federal court standards, incorporated in statute and now made part of 18 U.S.C.A. Sec. 3500, more commonly known as the Jencks Act.
This court discussed the Jencks Act in State v. Banks, 446 So.2d 497, 501 (La.App. 4th Cir.1984) as follows:
"The Jencks Act requires production of statements made by government witnesses even when incorporated in official investigatory reports. But it defines a discoverable "statement" as "a written statement made by said witness and signed or otherwise adopted by him." 18 U.S.C. Sec. 3500(e)(1). A witness adopts a statement only when he approves as his own the investigating officer's summary, selections, and interpretations of the witnesses's oral statements. United States v. Scaglione, 446 F.2d 182 (5th Cir.1971). Approval by the witness must be comparable to signature of the written statement, and discussions between the officer and the witness of the general substance of what the witness said does not mean the witness has adopted the statement. Moreover, a witness does not adopt a statement when the person taking the statement does not read it to the witness or when the witness does not read what the officer had written. Goldberg v. United States, 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976).
On the other hand, a memorandum of an interview with a government witness which is not adopted by the witness is discoverable where it is a "substantially verbatim recital" of the witness's words and does not contain comments, impressions or opinions of the investigating officer. However, there is not a substantially verbatim recital merely because a report contains phrases or isolated sentences identical to language used by the witness. United States v. Cole, 634 F.2d 866 (5th Cir.1981). Generally, a police officer's investigative notes of a suspect's description are not a "substantially verbatim recital" of a witness' statement. March v. United States, 362 A.2d 691 (D.C.1976).
With regard to the police report prepared by Officer Lore, the report cannot be considered as containing any statements made by Michael which were adopted by him or which were a "substantially verbatim recital" of his words. Thus, Michael could not have been validly impeached with the report prepared by Officer Lore. The trial court did not err in failing to disclose that report to defendant.
As to the statements given to Detective Dillman, the actual report prepared by him is not in the record. However, there is a report from a private investigator for defendant's attorney which purports to contain verbatim excerpts from Detective Dillman's report. Assuming the private investigator's report accurately reflects the police report, it appears that Michael signed a typewritten statement about the events of January 17, 1983. Apparently, the trial court found that there were no material discrepancies or omissions between the testimony Michael gave on direct examination and the statement he gave to Detective Dillman. Consequently, there was no Brady material to be disclosed to defendant.
A comparison of Michael Percy's testimony and the statement he gave to Detective Dillman (as set forth in the defense attorney's private investigator's report) shows no material discrepancies or omissions. The statement contains no evidence which would have created a reasonable doubt as to defendant's guilt.
This assignment of error is without merit.

VALIDITY OF ARREST WARRANT
Defendant claims that the affidavit issued in support of his arrest warrant contains an intentional misrepresentation. This misrepresentation would render the arrest warrant invalid, requiring it be quashed.
*755 This assignment of error is without merit. Defendant was indicted by a grand jury, and a valid indictment returned by a grand jury conclusively determines the existence of probable cause. State v. Howard, 325 So.2d 812 (La.1976). Because probable cause was found to exist, there is no basis for invalidating defendant's arrest.

SUPPLEMENTAL ASSIGNMENT

JURY CHARGE
Defense counsel filed a supplemental brief by leave of this court, arguing that the trial court improperly defined reasonable doubt in its charge to the jury. Counsel bases the argument on the recent United States Supreme Court decision in Cage v. Louisiana, ___ U.S. ___, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). A review of the transcript reveals no contemporaneous objection to the charge. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. C.Cr.P. art. 841. See, State v. Anthony Dobson, 578 So.2d 533 (La.App. 4th Cir.1991). Therefore, defendant's assignment is without merit.
For the reasons stated, defendant's conviction is affirmed. However, defendant's sentence as ordered by this court in Writ No. K-2759 is vacated. Defendant's original sentence (to thirty-five years at hard labor) as a second offender is reinstated.
AFFIRMED; SENTENCE VACATED; ORIGINAL SENTENCE REINSTATED.
NOTES
[1] However, once the court determines the status of the offender, the court must impose a sentence within the statutory range. State v. Holmes, 504 So.2d 589 (La.App. 4th Cir.1987), writ den., 506 So.2d 1223 (1987). In the instant case, defendant was subject to a minimum sentence of seven years and a maximum of forty-two. The trial court sentenced defendant to thirty-five years, clearly within the statutory range.
[2] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).