ARMSTRONG, Judge.
The defendant, Pernell Brown, was charged by grand jury indictment with committing first degree murder while kill *784 ing or attempting to inflict great bodily harm on more than one person on December 17,1989. Following a trial by a twelve-person jury he was found guilty as charged. After deliberating on the penalty, the jury recommended that the defendant be sentenced to life imprisonment. On July 17, 1991, in accordance with the jury’s recommendation, the defendant was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence.
The record reflects that some time after midnight on December 17, 1989, Austin Penny, John Dunham, and Layman Thomas were drinking at Penny’s home when they were asked by Elaine Jackson, Thomas’ mother and Penny’s mother-in-law, to check on her apartment. On the way to the apartment, they stopped at the Down Home Liquor Store where they bought some vodka. Two pool halls were in the same block as the liquor store.
When they reentered Thomas’ Camaro, the three men saw some juveniles fighting in the street. They decided to intervene and got out of the car. They broke up the fight and started to reenter the car with Penny getting in the front passenger seat and Dunham in the back seat. A man, later identified by Dunham and Thomas as the defendant, came out of one of the pool halls and accused the three men of “messing over” his nephew. The defendant pulled out a gun and pointed it at the trio. Thomas stumbled as he got into his car.
The defendant walked to the rear of Thomas’ car, and as Thomas drove away, defendant began shooting. One bullet struck Penny in the head, fatally wounding him. Thomas was struck in the arm, but Dunham was uninjured. Thomas managed to drive back to Penny’s house where the police and ambulance were summoned.
When the police came to investigate, Dunham led them back to the scene and to a juvenile named Tony, whom Dunham erroneously believed had been involved in the fight. He then led them to another juvenile named Timothy, whom Dunham had seen running from the scene. Timothy directed the police to Danny Coleman, another juvenile, who allegedly witnessed the shooting. However, Coleman died before trial, and his identification of the defendant, in a photographic lineup, as the shooter, was declared inadmissible.
Subsequently, in February, 1990, both Dunham and Thomas selected the defendant’s picture in a photographic lineup.
A review of the record reveals no errors patent.
In his first assignment of error, the defendant complains that the trial court erred in allowing John Dunham’s hearsay testimony regarding an out of court identification by Danny Coleman and in not granting the defendant’s motion for a mistrial based on the admission of this hearsay testimony. The defendant argues that the State prompted Dunham to testify about the identification by Coleman even though the trial court had ruled that any testimony related to that identification was inadmissible due to the fact that Coleman was dead. The defendant also points to the testimony of Detective Byron Adams regarding his investigation in which he stated that he interviewed Coleman, as another attempt by the State to get inadmissible hearsay into evidence.
Detective Adams testified that he interviewed Coleman and got a statement from him; but before Detective Adams could testify as to what Coleman told him, defense counsel objected. The trial court sustained the objection and instructed him not to go into what he was told. Detective Adams then testified that as a result of his investigation, he secured an arrest warrant for defendant.
The prosecutor later examined Dunham about assisting Detective Adams in the search for the juvenile witnesses, when the following occurred:
BY MS. JENKINS:
Q. Okay, after you spoke with Timothy, where did you go?
A. To Danny Coleman [sic] house.
Q. And after you all spoke with Danny, where did you go?
A. We went up to the police headquarters and made statements. He had the *785 line-up and Danny picked the line-up out.
MR. MERRITT:
Move for relief under the code, your Honor.
THE COURT:
Overruled.
Dunham again referred to Coleman’s picking out a photograph when he was cross-examined, and while refusing to grant a mistrial, the trial judge admonished the jury to disregard any testimony regarding identifications that were not proven from the witness stand.
At the close of trial, the trial judge gave his reasons for the ruling and stated that he believed the reference was inadvertent. He further stated:
[But] the Court believes that he [Dun-ham] did not go into specifics as to whose picture he [Coleman] picked out or what exactly the situation was before he was stopped. And the Court believes that it was harmless.
There is no support for the defendant’s contention that the prosecutor prompted Dunham to refer to the photograph identification made by Coleman. Dunham’s answer was not responsive to the prosecutor’s question, which was directed toward the search for witnesses on the night of the murder. As to the specifics of Dunham’s testimony, it does not appear that any inadmissible hearsay actually got before the jury. Dunham stated only that Coleman had picked out a photograph; he did not state that Coleman had selected defendant’s photograph. The trial judge correctly denied a mistrial. See State v. Egana, 550 So.2d 1243 (La.App. 4th Cir.1989). This assignment of error is without merit.
In his second assignment of error, the defendant complains that the trial court erred in refusing to conduct an in camera inspection of the police report, specifically the statement given by Danny Coleman contained in the report, to determine whether there was any exculpatory evidence. The defendant asks that the case be remanded to the trial court for such an examination.
At trial, defense counsel made the following request:
We’re moving at this time that you review the statement of Danny Coleman for inconsistencies in theory of the State that the purpose of his interview at the same time and for any Brady material that is in there. For instance, three people were doing the shooting and Pernell didn’t have the gun or that kind of thing or the statement of Danny Coleman.
[[Image here]]
All I want you to do is look at it and review it for us and tell us whether or not Danny, whether or not he says, in fact, that Pernell is the man with the gun or it was someone else with the gun or there were three or four other people around. And whether he establishes mere presence or not.
In State v. Ates, 418 So.2d 1326 (La.1982), the trial judge refused to conduct an in camera inspection of statements made by a prosecution witness. The Supreme Court ruled that this was error and remanded the case so that the inspection could be conducted.
However, in State v. Banks, 446 So.2d 497 (La.App. 4th Cir.1984), this Court ruled that Ates did not require an in camera inspection in every case. The court found the trial judge’s refusal to conduct an inspection was not erroneous because the defendant failed to show that a discoverable statement had been made to the police. But, the court also noted an in camera inspection would have dispelled needless questions.
In the instant case, the trial judge denied the request for an in camera inspection of the police report because Danny Coleman was deceased and thus anything in his statement would not be relevant.
Although it would have been better for the trial judge to have inspected Coleman’s statement, it is difficult to see what practical effect such an inspection would have had. Because Coleman was dead, he could not be impeached with any inconsistencies, and anything else he said would be pure hearsay, especially since his statement was *786 not given under oath. Therefore, considering the peculiar circumstances of this case, the trial judge was not obligated to conduct an in camera inspection. This assignment of error is without merit.
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.